UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| COLETTE CYWES BENTLEY, INDIVIDUALLY AND AS CO-TRUSTEE OF THE CYWES FAMILY TRUST | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) |
| ROBERT CYWES, INDIVIDUALLY AND AS CO-TRUSTEE OF THE CYWES FAMILY TRUST | ) ) ) ) |
| *Defendant.* | ) ) |

CASE NO.    22-4189

HONORABLE

COMPLAINT

**JURY DEMAND ENDORSED HEREON**

For her Complaint against the Defendant, Plaintiff states as follows:

## I.    Nature of the Case

1.    Plaintiff and Defendant are siblings. They are the co-trustees and ultimate beneficiaries of a revocable trust established by their father. As grantor, their father intended that the trust would benefit his two children equally.

2.    Through a series of extraordinary and fraudulent acts--including at least twice forging his sister's name to trust-related documents--the Defendant unlawfully distributed virtually all of the trust assets to himself and his spouse, all for his personal benefit in contravention of the trust's terms and purpose.

3.    Plaintiff brings this action, individually and as a co-trustee on behalf of all trust beneficiaries, to remedy Defendant's serious breaches of trust; to seek an accounting; and to seek declaratory and other legal and equitable relief against the Defendant.

## II.    Parties

4.    The Plaintiff is an individual who resides in Brookline, Massachusetts. At all times relevant hereto, she has served as a co-trustee of the Sidney Cywes Trust Agreement dated May 29, 1998, which later came to be referred to as the "Cywes Family USA Trust" (the "Trust"). Plaintiff is also a beneficiary of the Trust. A true copy of the Trust Agreement is attached hereto as Exhibit 1.

5.    The Defendant is an individual who resides in Jupiter, Florida. He is Plaintiff's brother. At all times relevant hereto he has served as a co-trustee of the Trust.

## III.    Jurisdiction and Venue

6.    The Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.    The Court has personal jurisdiction over the Defendant because he has served as a co-trustee of the Trust, which has its situs and was administered in the State of Ohio.  Under Ohio law (which governs the Trust), by accepting a trusteeship, Defendant "submit[ted] personally to the jurisdiction of the courts of this state regarding any matter involving the trust." O.R.C. § 5802.02. Further, Defendant transacted business in this state and committed certain fraudulent and tortious acts in this state sufficient to subject him to jurisdiction under Ohio's long arm statute, O.R.C. § 2307.382, and principles of due process.

8.    Venue in this judicial district is proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and a substantial part of the property at issue was located in this judicial district.

## IV.    Factual Allegations

### The Trust Agreement

9.      Plaintiff and Defendant are the only children of Sidney and Marlene Cywes. Sidney Cywes was a world renowned, successful, and respected pediatric surgeon who resided in the Republic of South Africa until his death in April of 2020. Marlene Cywes survives him and currently resides in the Republic of South Africa.

10.     As a part of his overall estate plan, in 1998 Sidney Cywes formed the Trust in the United States, at least in part because his children, Robert and Colette, had taken residence here. Consistent with his nature and his overall estate plan, Sidney Cywes intended that the Trust would provide equal benefit and support to his two children and their descendants.

11.     The Trust was Sidney's revocable grantor trust which initially named Sidney, Robert, and Colette as co-trustees (collectively identified in the Trust Agreement as "Trustee"). The Trust Agreement provided that when two or more persons were serving as Trustee, "the act of a majority of such persons shall be deemed to be the act of all of them." Exhibit 1 at § 11(r).

12.     At and around the time of forming the Trust, Sidney Cywes transferred approximately $500,000 into an account in the Trust's name at UBS Financial Services in Columbus, Ohio ("UBS"). According to the Trust Agreement, it was "contemplate[d] that [he] may in the future, during [his] lifetime, transfer additional property to the Trust." Exhibit 1 at p. 1.

13.     The Trust Agreement provided that during the Grantor's lifetime, the co-trustees "shall invest the assets of the trust estate only as directed by the Grantor." Exhibit 1 at § 2.

14.     The Trust Agreement provided that during the Grantor's lifetime, the co-trustees "shall distribute such portions of the income and principal of the trust to, for the benefit of, or at the direction of the Grantor as the Grantor from time to time directs." Exhibit 1 at § 3.

15. The Trust Agreement provided that upon the Grantor's death, all income earned by the trust shall be distributed to the Grantor's spouse (Marlene) and the Grantor's children (Plaintiff and Defendant). Exhibit 1 at § 5. Further, the co-trustees had discretion during Marlene's life to distribute the Trust principal to Marlene and the children. *Id.*

16. The Trust Agreement provided that upon the death of Marlene, the co-trustees shall distribute all of the Trust's undistributed income and principal to "the Grantor's descendants and their spouses" as specified in Marlene's will. *Id.* Marlene Cywes' will provided that the assets should be split equally between Plaintiff and Defendant.

**Robert's Fraud and Breach of Trust**

17. In 2003, Sidney Cywes resigned as a co-trustee of the Trust, leaving Plaintiff and Defendant as the co-trustees.

18. After Sidney's resignation as a trustee, neither Plaintiff nor Defendant was empowered or authorized to act as co-trustee without the approval of the other, pursuant to § 11(r) of the Trust Agreement.

19. Despite this development, Defendant began to act unilaterally regarding Trust assets, treating the Trust assets and account as if they were his own.

20. In 2014, Defendant became embroiled in a contentious divorce from his wife, Irene. The divorce litigation persisted for the next five years, during which time Defendant undertook a scheme and course of conduct to convert trust assets for his personal use and benefit.

**The Fraudulent 2015 Trust Document**

21. In August of 2015, without notifying Plaintiff, Defendant caused an attorney in Columbus, Ohio to draft a document identified as the "Cywes Family Trust Agreement" (the "2015

4

Trust Document") which purported to be an amendment and restatement of the Trust. See Exhibit 2 hereto.

22.     The 2015 Trust Document stated that it was made between Sidney Cywes as Grantor and Plaintiff and Defendant as co-trustees (identified collectively in the document as "Trustee"). *Id.*

23.     The 2015 Trust Document purported significantly to alter the Trust's purpose, and the nature of the beneficiaries' interests, in Defendant's favor. It stated that it was made "for the benefit of the Grantor, the Grantor's wife, the [Defendant], and others." It contemplated for Marlene a lifetime income interest after Sidney's death but purported to eliminate Marlene's testamentary power of appointment, instead mandating that upon her death, the remaining accumulated income and principal of the Trust would be administered for [Defendant's] benefit. *Id.* at § 5.

24.     The 2015 Trust Document provided that Plaintiff would not receive any Trust assets unless Defendant died with no descendants. *Id.* at § 5(c)(ii). Defendant had two young children at the time.

25.     The 2015 Trust Document completely contradicted Sidney Cywes' actions and words throughout his life; he had indicated in discussions with Plaintiff and others (including UBS) that he desired for his children to equally benefit from the Trust. He had never during this time indicated to anyone (including UBS) a desire to unduly favor Defendant or to disfavor Plaintiff.

26.     The 2015 Trust Document also purported to modify the co-trustees' powers and authority by providing that, "[w]henever two or more persons...are serving as Trustee hereunder, the act of a majority of such persons shall be deemed to be the act of all of them; provided that, if [Defendant] is serving as the Trustee or a Co-Trustee, [Defendant] shall have authority to make all

investment decisions on behalf of the trust, without any action by the other Co-Trustee." *Id.* at §
11(s).

27.     The 2015 Trust Document provided that it was "drawn and was originally executed
by the Trustee in the State of Ohio." It further stated that "[t]he principal place of administration
of the trust is also the State of Ohio and its administration is governed by the law of the State of
Ohio." *Id.* at § 21.

28.     Plaintiff was never advised about the 2015 Trust Document at or around the time it
was purportedly made.

29.     To become effective as drafted, the 2015 Trust Document required Plaintiff to
accept trusteeship and sign the amended and restated trust agreement. Plaintiff never knew about,
let alone signed, the 2015 Trust Document. But Defendant provided UBS, the custodian of Trust
assets, with a copy of the 2015 Trust Document that included a signature page dated August 12,
2015, purportedly bearing Plaintiff's signature. Exhibit 2 at p. 23.

30.     The signature on the 2015 Trust Document provided to UBS is not Plaintiff's
signature.

31.     Below, the image on the left (taken from Exhibit 1 hereto, the 1998 Trust
Agreement) shows Plaintiff's authentic signature. The image on the right (taken from Exhibit 2
hereto) shows the forged signature from the 2015 Trust Document.

6

|  |  |
|---|---|
| May 29, 1998 | August 12, 2015 |
| "SIDNEY CYWES TRUST AGREEMENT" | "CYWES FAMILY TRUST AGREEMENT" |

Sidney Cywes, Grantor | Sidney Cywes, Grantor

Robert Cywes, Trustee | Robert Cywes, Trustee

Colette Cywes, Trustee | Colette Bentler, Trustee

32.     None of the signatures on the 2015 Trust Document were witnessed or notarized. Plaintiff believes, and therefore alleges, that Defendant forged Plaintiff's signature (and likely her father's signature) on the 2015 Trust Document.

33.     Plaintiff never learned anything about the 2015 Trust Document until 2021, as further described below.

**The Jacksonville Condominium**

34.     Notably, on August 14, 2015--only two days after he signed and forged Plaintiff's signature to the 2015 Trust Document--Defendant unilaterally caused the Trust to spend $164,215 from the Trust's account at UBS, to purchase for his personal use a condominium in Jacksonville, Florida, located at Deerwood Place Condominiums (the "Jacksonville Condominium").

35.     The deed to the Jacksonville Condominium stated as follows:

7

**General Warranty Deed**

Made this August 14, 2015, By Sudhir R. Nadubettu, an unmarried man, whose address is: 232 COLLIGNON WAY 4B, RIVERVALE NJ 07675, hereinafter called the Grantor, to Robert Cywes and Colette Bentley, Trustees under the Cywes Family Trust dated May 29, 1998, whose address is: 19906 Loxahatchee Drive, Jupiter, FL 33458, hereinafter called the Grantee:

*See* Exhibit 3 hereto.

36.     Plaintiff had no notice and took no part in the Trust's purchase of the Jacksonville Condominium, and did not learn of the transaction until years after it occurred.

37.     Defendant already owned a personal residence in Jupiter, Florida at the time he caused the Trust to purchase the Jacksonville Condominium.

38.     Property records indicate that Janae Nuspl, to whom Defendant would become married in 2017, also owned a condominium in the same building and development as the Jacksonville Condominium.

**Sale of the Jacksonville Condominium and Transfer of Proceeds**

39.     On August 19, 2019, Defendant unilaterally caused the Trust to sell the Jacksonville Condominium to a third party, for $198,500.

40.     To accomplish that transaction Defendant was required by Florida law to create and file a Certification of Trust delineating his power and authority to sell the Trust's real property-- which he lacked, without Plaintiff's knowledge and consent.

41.     Because he wanted to sell the Jacksonville Condominium for his personal benefit, Defendant did not request or obtain Plaintiff's consent. Instead, he created and publicly filed a fraudulent Certification of Trust. *See* Exhibit 4 hereto.

42.     The Certification of Trust used to implement the sale of the Jacksonville Condominium falsely stated that Defendant and his new wife, Janae, were "the duly authorized and currently acting Co-Trustees of the Trust." *Id.* at ¶ 2.

43.     To support this false statement, the Certification of Trust attached a "Certificate of Trust" purportedly dated December 23, 2016. *Id.* at p. 7. The 2016 "Certificate of Trust" falsely stated that "Colette Cywes" had resigned as a trustee of the Trust in 2016.[1] That resignation document included a signature page on which Plaintiff's signature had been forged. *Id.* at p. 8.

44.     Plaintiff never resigned as a co-trustee of the Trust. The signature on the 2016 Certificate of Trust (in the third column to the right, below) is not Plaintiff's signature. Plaintiff believes, and therefore alleges, that Defendant forged her signature (and likely her father's signature) to the document in order to accomplish the sale of the Jacksonville Condominium, and perhaps other Trust transactions currently unknown to Plaintiff.

| May 29, 1998 | August 12, 2015 | December 23, 2016 |
|---|---|---|
| **"SIDNEY CYWES TRUST AGREEMENT"** | **"CYWES FAMILY TRUST AGREEMENT"** | **"CERTIFICATE OF TRUST"** |



45.     The Certificate of Trust publicly filed by Defendant also falsely stated that "[on] this day, December 23, 2016, Janae J. Cywes hereby agrees to be a Trustee of [the Trust]." The signature page bears the signature of "Janae J. Cywes, Trustee."

---

[1] By 2016 Plaintiff was married and used the name Colette Bentley.

9

46. Defendant and Janae Nuspl were not yet married in December of 2016, when Janae supposedly made and signed the Certificate of Trust as "Janae Cywes, Trustee." They married in May of 2017. *See* Exhibit 5 hereto.

47. Defendant obviously created the fraudulent December 23, 2016, Certificate of Trust knowing that he lacked power and authority to sell the Trust's Jacksonville Condominium without notifying Plaintiff or obtaining her approval as the co-trustee of the Trust.

48. Upon selling the Trust's Jacksonville Condominium in August of 2019, Defendant caused the Trust's proceeds of sale to be distributed to himself and/or his new wife, Janae, without notifying Plaintiff or obtaining her consent as co-trustee.[2]

49. Plaintiff was unaware of the sale of the Trust's Jacksonville Condominium and the distribution of the proceeds to Defendant and his wife, until 2022.

**Robert's Transfer of Trust Funds to himself and his Fiancée**

50. Plaintiff has now learned that virtually all Trust funds once held by UBS were distributed over time to the Defendant. The portions of the UBS Trust file available to Plaintiff indicate that from 2013 to 2019, Defendant repeatedly unilaterally instructed UBS to distribute tens of thousands of dollars in cash from the Trust's account to Defendant's personal bank account. Despite being a co-trustee, Plaintiff was not advised of these distributions when they occurred and did not approve the distributions as they occurred. There is no indication that the Trust's Grantor knew and approved of many of these distributions, and the fraudulent documents and improper transactions described above raise disturbing concerns about any such distributions.

---

[2] Notably, even if the Trust was then governed by the terms of the forged and fraudulent 2015 Trust Document (which is denied), Robert's power to act alone would have been limited to lawful and proper "investment" decisions—he lacked authority to distribute trust assets (especially to himself or his wife) without Plaintiff's knowledge and consent. *See* Exhibit 3 at § 11(s).

51.  Furthermore, on or around April 28, 2017, Defendant caused UBS to transfer $93,034 from the Trust's UBS account into the account of his then-fiancee Janae Nuspl. He accomplished this distribution by providing UBS with a "Transfer Letter" that was signed only by him and promised to hold UBS harmless for complying with his instructions. *See* Exhibit 6 hereto.

52.  Available UBS records do not conclusively demonstrate whether the Trust's Grantor knowingly approved the April 2017 distribution. In any event, if Defendant procured the Grantor's approval, available evidence of his fraudulent abuse of Trust assets strongly suggests he did so through misrepresentation or manipulation.

53.  Plaintiff, despite being a co-trustee of the Trust, did not receive notice or provide authorization of the 2017 distribution of Trust assets to Janae Nuspl at or around the time it occurred.[3]

54.  Plaintiff did not learn of the distribution of Trust assets to Ms. Nuspl until 2022.

**Plaintiff's Discovery of Robert's Fraud and Breach of Trust**

55.  Sidney Cywes died suddenly in South Africa, in April of 2020, during the Covid-19 pandemic.

56.  Plaintiff's mother, Marlene Cywes, survives and continues to reside in South Africa. Due to her declining cognitive condition, curatorship proceedings are underway in the Republic of South Africa court system.

57.  Several weeks after her father's death, Plaintiff obtained access to certain of her father's personal information, including some of his emails. Plaintiff then reviewed emails

---

[3] Notably, even if the Trust was then governed by the terms of the forged and fraudulent 2015 Trust Document (which is denied), Robert's power to act alone would have been limited to lawful and proper "investment" decisions—he lacked authority to distribute trust assets (especially to his fiancee) without Plaintiff's knowledge and consent. *See* Exhibit 3 at § 11(s).

purporting to be communications between her brother, her father, and UBS, which she had never before seen.

58.     Plaintiff subsequently reached out to William Grove of UBS, to ask questions about troubling documents and events referenced in the emails from her father's account.

59.     In response, Grove and UBS provided Plaintiff on August 8, 2022, with a copy of the 2015 Trust Document (Exhibit 2 hereto) that purported to restate the Trust and bore her forged signature. This was Plaintiff's first knowledge of the forged 2015 Trust Document.

60.     Through counsel, Plaintiff subsequently contacted the Ohio lawyer who drafted the 2015 Trust Document. That lawyer confirmed he had drafted such a document but never thereafter saw or heard that the 2015 Trust Document was executed, and his files contained no signed copy of the 2015 Trust Document.

61.     On August 15, 2022, Grove and UBS provided Plaintiff with additional information comprising cut-and-pasted excerpts from certain UBS emails referencing some of the transactions alleged herein. Plaintiff has yet to obtain the complete UBS file for the Trust account.

62.     On October 17, 2022, through counsel, Plaintiff emailed Defendant requesting, among other things, that Defendant's legal counsel contact Plaintiff's counsel "immediately." Defendant has ignored that communication.

## COUNT I

### (Declaratory Judgment)

63.     Plaintiff here restates and re-alleges each of the preceding paragraphs as if fully rewritten.

64.     Plaintiff brings this claim under the Declaratory Judgment Act, 28 U.S.C. §2201.

65.     An actual case and controversy exists between Plaintiff and Defendant regarding:

    a.   the validity and effectiveness of the 2015 Trust Document;

b.   regardless of the validity and effectiveness of the 2015 Trust Document, Plaintiff's legal status as a trustee of the Trust, in light of the fraudulent December 23, 2016, resignation contained in the Certificate of Trust publicly filed by Robert with the Duval County, Florida Clerk of Records (Exhibit 4 hereto);

c.   the purported status of Janae Cywes as a trustee of the Trust;

d.   whether Defendant unilaterally had power and authority to instruct UBS make the various distributions of Trust funds he caused to be made to himself and his new wife.

66.   Plaintiff is entitled to an order from this Court with judicial declarations as follows:

a.   That the 2015 Trust Document was an attempted fraud by the Defendant; that it was never lawfully executed or effective; and that the rights and relations of the parties and the beneficiaries are governed by the original Trust Agreement dated May 29, 1998;

b.   that (regardless of whether the 1998 Trust Agreement or the 2015 Trust Document was effective or can be applied) Plaintiff never resigned as a trustee of the Trust and Defendant and/or Janae Cywes fraudulently created and signed the alleged resignation and Certificate of Trust dated December 23, 2016 in order to fraudulently convert Trust property;

c.   that (regardless of whether the 1998 Trust Agreement or the 2015 Trust Document was effective or can be applied) Defendant lacked power and authority to cause distributions to himself or his fiancée/spouse without Plaintiff's knowledge and consent as co-trustee;

    d. that Defendant must provide a full and complete accounting of all Trust funds and assets, including the assets once held by UBS and any assets held or transferred to any other person, account, or custodian;

    e. that Defendant has committed serious breaches of trust; he has failed to cooperate and communicate with his co-trustee in a manner which has substantially harmed and impaired the administration of the Trust; and he has demonstrated unfitness, unwillingness, and persistent failure to administer the trust properly and effectively, all justifying his removal as a trustee as set forth in Count III below;

    f. that Defendant has an obligation to return Trust funds improperly distributed to himself and his wife.

67. The requested orders and declarations are necessary to remedy and resolve actual harm and ongoing disputes affecting the Trust, and will resolve the disputed issues so as to permit the just and efficient administration of the Trust for its intended beneficiaries.

## COUNT II
### (Breach of fiduciary duties)

68. Plaintiff here restates and re-alleges each of the preceding paragraphs as if fully rewritten.

69. Plaintiff brings this claim in her capacity as a beneficiary of the Trust.

70. Plaintiff also brings this claim in her capacity as co-trustee of the Trust upon whom Ohio law confers (a) standing to represent and bind all of the Trust's beneficiaries, and (b) a legal duty to compel a co-trustee to redress a serious breach of trust. O.R.C. 5803.03(D); 5807.03(G).

71.     In all matters relating to the Trust and described above, Defendant owed Plaintiff and the other beneficiaries of the Trust a fiduciary duty to act in good faith and in accordance with the purpose of the Trust.

72.     In all matters relating to the Trust and described above, Defendant owed Plaintiff and the other beneficiaries of the Trust a fiduciary duty of loyalty requiring him to administer the trust solely in the interests of the beneficiaries.

73.     The Trust instrument additionally provides that Defendant's powers as co-trustee were limited such that he "shall not take any action which would favor one beneficiary or group of beneficiaries over any other beneficiary or group of beneficiaries." *See* Exhibit 1 at §12(c).[4]

74.     The Trust instrument further provides that Defendant will be held liable if he exercises his powers as a trustee in a manner reflecting "negligence, dishonesty, or willful breach of trust." Exhibit 1 at §15.[5]

75.     The Defendant breached his fiduciary duties to the Plaintiff and the other beneficiaries, by among other things:

   a.   Repeatedly using his status as co-trustee to unilaterally direct UBS to wire money from the Trust account into his personal account(s), without the required knowledge or consent of both the Grantor and the co-trustee;

   b.   attempting to gain additional power and control over the Trust and its assets by creating a purported amended and restated trust instrument (the 2015 Trust Document), forging Plaintiff's signature to the document, and providing that document to UBS as if it was a validly executed agreement;

---

[4] The fraudulent 2015 Trust Document included the same limitation on Trustee's powers. *See* Exhibit 3 at §12(a).

[5] The fraudulent 2015 Trust Document included the same limitation on Trustee's powers. *See* Exhibit 3 at §15.

     c.   unilaterally acting without authority to use Trust funds to purchase himself a second residence in Jacksonville, Florida;

     d.   misleading UBS into distributing the cash balance of the trust account to his fiancée, without advising Plaintiff or obtaining her consent as co-trustee;

     e.   creating a fraudulent resignation of his sister as co-trustee, forging her name to the document, using the document to accomplish the improper and unauthorized sale of trust property, and distributing to himself or his spouse the Trust's proceeds from the unauthorized sale.

     f.   misleading Plaintiff, the Grantor, the custodian of the Trust's account, and third parties in connection with all of the foregoing transactions (and likely others);

     g.   failing honestly and completely to report the foregoing transactions to the co-Trustee or the Trust's beneficiaries.

76.    Plaintiff, the Trust, and all Trust beneficiaries (including Defendant's mother) have been deprived of Trust assets and harmed by Defendant's breaches of trust, in amounts greater than $75,000. Plaintiff believes that Defendant has wrongfully taken for himself over $400,000 in Trust funds and assets.

77.    Plaintiff is unaware of all of Defendant's unlawful activity related to the Trust or Trust property. In addition to other legal and equitable remedies pleaded herein, Plaintiff demands that Defendant provide an accounting of all Trust transactions, assets and funds from the inception of the Trust to the present day.

78.    Defendant has acted in a manner and with a mindset justifying the imposition of punitive damages.

## COUNT III

### (Removal of trustee)

79.     Plaintiff here restates and re-alleges each of the preceding paragraphs as if fully rewritten.

80.     Defendant's acts, all as alleged herein, comprise serious breaches of trust.

81.     Defendant has failed to cooperate and communicate with his co-trustee, in a manner which has substantially harmed and impaired the administration of the Trust.

82.     Defendant has demonstrated unfitness, unwillingness, and persistent failure to administer the trust properly and effectively.

83.     For all these reasons, Defendant should be removed as co-trustee of the Trust, pursuant to O.R.C. 5807.06.

84.     Pursuant to O.R.C. 5807.06, the Court should also order the Defendant to recover and/or disgorge all unauthorized and improper distributions received or profits made, and should further order the Defendant to pay the costs and expenses of this action, including reasonable attorney fees.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in her favor against the Defendant on all Counts of this Complaint, and to grant the following relief:

1.  On Count I of the Complaint, an order with judicial declarations:

    a.  That the 2015 Trust Document was an attempted fraud by the Defendant; that it was never lawfully executed or effective; and that the rights and relations of the parties and the beneficiaries are governed by the original Trust Agreement dated May 29, 1998.

    b.  That (regardless of whether the 1998 Trust Agreement or the 2015 Trust Document was effective or can be applied) Plaintiff never resigned as a trustee of the Trust and Defendant and/or Janae Cywes fraudulently created and signed the alleged resignation and Certificate of Trust dated December 23, 2016 in order to fraudulently convert Trust property.

     c. That (regardless of whether the 1998 Trust Agreement or the 2015 Trust Document was effective or can be applied) Defendant lacked power and authority to cause distributions to himself or his wife without Plaintiff's knowledge and consent as co-trustee.

     d. That Defendant must provide a full and complete accounting of all Trust funds and assets.

     e. That Defendant has committed serious breaches of trust; he has failed to cooperate and communicate with his co-trustee in a manner which has substantially harmed and impaired the administration of the Trust; and he has demonstrated unfitness, unwillingness, and persistent failure to administer the trust properly and effectively, all justifying his removal as a trustee.

     f. That Defendant has an obligation to return Trust funds improperly distributed to himself and his wife.

2. On Count II of the Complaint, an order that Defendant provide a full and thorough accounting of all transactions and other financial activity relating in any way to the Trust, and a judgment for compensatory damages for all loss and damage sustained as a result of the conduct described herein, for punitive and exemplary damages, and for payment of all the costs and expenses of this litigation, including reasonable attorney fees;

3. On Count III of the Complaint, an order removing Defendant as a trustee of the Trust pursuant to O.R.C. 5807.06 and awarding any other relief necessary to protect the Trust property or the interests of the beneficiaries;

4. An award of all pre-judgment and post-judgment interest allowed by law; and

5. An order granting any other legal or equitable relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Colette Cywes Bentley, Individually and as Co-Trustee of the Cywes Family Trust, hereby demands a trial by jury as to all issues so triable.

_____ */s/ John F. Hill* _____
John F. Hill, Esq.

Respectfully submitted,

_/s/ John F. Hill_
John F. Hill, Esq. (0039675)
Moriah K. Cheatham Williams, Esq. (0098733)
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1 Gojo Plaza, Suite 310
Akron, Ohio 44311
T: 330.272.0000
F: 330.272.0019
John.Hill@lewisbrisbois.com
Moriah.Cheathamwilliams@lewisbrisbois.com

_Attorneys for Plaintiff Colette Cywes Bentley,_
_Individually and as Co-Trustee of the Cywes_
_Family Trust_

SIDNEY CYWES

TRUST AGREEMENT

**EXHIBIT 1**

# TABLE OF CONTENTS

<u>Page</u>

Recitals . . . . . . . . . . . . . . . . . . . . .  1

§1.   Rights of Grantor . . . . . . . . . . . . . . . .  2

§2.   Powers of Trustee Regarding
      Investments During the
      Grantor's Lifetime . . . . . . . . . . . . . . .  3

§3.   Distribution of Income and
      Principal . . . . . . . . . . . . . . . . . . .  4

§4.   Termination of Grantor's
      Right to Revoke, Alter, or
      Amend . . . . . . . . . . . . . . . . . . . . .  5

§5.   Administration of Trust After
      Death of Grantor . . . . . . . . . . . . . . .  6

§6.   Division of Trust into Shares;
      Administration of Shares . . . . . . . . . . .  8

§7.   Continuation of Trust . . . . . . . . . . . . .  10

§8.   Alienation or Encumbrance of
      Interests . . . . . . . . . . . . . . . . . . .  11

§9.   Rule Against Perpetuities . . . . . . . . . . .  12

§10.  Powers of Trustee Regarding
      Investments . . . . . . . . . . . . . . . . . .  13

§11.  Powers of Trustee Regarding
      Other Matters . . . . . . . . . . . . . . . . .  15

§12.  Limitation on Powers of the
      Trustee . . . . . . . . . . . . . . . . . . . .  21

§13.  Records and Accounts . . . . . . . . . . . . .  22

§14.  Fidelity Bond . . . . . . . . . . . . . . . . .  23

§15.  Liability . . . . . . . . . . . . . . . . . . .  24

Page

§16.  Position of Third Persons
      Dealing with Trustee  . . . . . . . . . . . . . . . 25

§17.  Optional Termination  . . . . . . . . . . . . . . . 26

§18.  Contributions to Trust by
      Others  . . . . . . . . . . . . . . . . . . . . . . 27

§19.  Successor Trustees  . . . . . . . . . . . . . . . . 28

§20.  Compensation  . . . . . . . . . . . . . . . . . . . 30

§21.  Governing Law . . . . . . . . . . . . . . . . . . . 31

§22.  Captions  . . . . . . . . . . . . . . . . . . . . . 32

§23.  Definitions . . . . . . . . . . . . . . . . . . . . 33

Signatures  . . . . . . . . . . . . . . . . . . . . . . . 33

CM03484

# SIDNEY CYWES TRUST AGREEMENT

This is an agreement made at Brookline, Massachusetts, United States of America, on _29 May_, 1998, by and between **Sidney Cywes**, of Constantia, Republic of South Africa, hereinafter called the "Grantor", and **Sidney Cywes**, **Robert Cywes**, of Ann Arbor, Michigan, and **Colette Cywes**, of Brookline, Massachusetts, hereinafter called the "Trustee".

## Recitals

A.    The Grantor has transferred to the Trustee the McDonald & Company Securities, Inc. Account Number _352 25979_ as the initial principal of the trust, which the Trustee hereby acknowledges receiving.

B.    The purpose of the Grantor in entering into this agreement is to effectuate a plan for the orderly, businesslike administration of the trust estate for the benefit of the Grantor, the Grantor's spouse, and others.   Broad discretionary powers are conferred upon the Trustee to provide adequate flexibility in carrying out this plan.

C.    The Grantor contemplates that the Grantor may in the future, during the Grantor's lifetime, transfer additional property to the Trustee to be held and administered hereunder; that the Grantor may, by will, bequeath additional property to the Trustee to be held and administered hereunder; and that other persons may, by inter vivos or testamentary transfer, cause additional property to come into the hands of the Trustee to be held and administered hereunder.

D.    The Trustee is willing to hold all property that has or may come into the hands of the Trustee hereunder and to administer the same according to the provisions hereof.

E.    Various of the terms used in this agreement are defined, and shall have the meanings set forth in the final section hereof.

The Parties Agree as Follows:

-1-

§1.  **Rights of Grantor.**  During the lifetime of the Grantor, the Grantor shall have the following rights:

(a)  By written notice to the Trustee to:

    (i)  revoke all or any part of this agreement;

    (ii)  withdraw all or any part of the trust's assets; or

    (iii)  alter or amend any term or provision of this agreement, except the Grantor shall have no right or power to change the duties or immunities of the Trustee without the Trustee's written consent.

A complete revocation of this agreement shall vest all of the trust's assets in the Grantor.  Upon the Grantor's request, the Trustee shall execute and deliver to the Grantor any and all instruments required to transfer to the Grantor any trust asset to which the Grantor may be entitled.

(b)  Without the Trustee's consent, to obtain or exercise any benefits, values, rights, privileges, or options that may be available under any policy of insurance owned by the Grantor.  Without limiting the generality of the foregoing, the Grantor retains the right, during the Grantor's lifetime and without the Trustee's consent, from time to time to sell, assign, hypothecate, borrow upon, convert, surrender, or change the beneficiary of any such policy.  Upon the Grantor's request, the Trustee shall execute such releases or other instruments as may be required to enable the Grantor to obtain any benefit or value, or to exercise any right, privilege, or option reserved to the Grantor hereunder.

(c)  At any time or times to name the Trustee a beneficiary under any policy or policies of insurance upon the Grantor's life or to convey, assign, transfer, appoint, or deliver to the Trustee any additional property, real or personal (including policies of insurance on anyone's life).  The Grantor may also by will devise, bequeath, or appoint to the Trustee any additional property, real or personal (including policies of insurance on anyone's life).  The Trustee shall hold, manage, and distribute all such additional property pursuant to the provisions hereof.

-2-

**§2. Powers of Trustee Regarding Investments During the Grantor's Lifetime.** As long as the Grantor is alive and competent, the Trustee shall invest the assets of the trust estate only as directed by the Grantor. If the Grantor becomes incompetent or ceases to serve as Trustee, any other or successor Trustee may invest the assets of the trust estate in the same manner in which they were invested by the Grantor, and shall not be liable for any losses incurred by the trust estate as a result of following the Grantor's investment instructions or manner of investing.

Except as is provided hereinabove in this §2, the Trustee shall have the following powers regarding investments:

(a)    The Trustee may retain in the same form any property which comes into the Trustee's hands, regardless of the character of such property and of whether it is or shall be authorized by law for investment by trustees and of whether it represents or will represent all or a disproportionately large part of the trust estate.

(b)    The Trustee may invest the assets of the trust estate in any form of property whatsoever. Without limiting the foregoing, the Trustee may invest in stocks, common or preferred; in shares, common or preferred, of investment companies, investment trusts or mutual funds, whether open-end or closed-end; in so-called "common trust funds"; in interests in partnerships, whether as a general or as a limited partner; in real property or interests therein, regardless of where located; and in bonds, notes, and other evidences of indebtedness, regardless of when the same shall mature, and regardless of whether the same are secured or unsecured, and, if secured, regardless of the character of the security and the location of any property constituting the security.

(c)    During the lifetime of the Grantor, the Trustee may purchase and maintain insurance on the life of the Grantor, as well as health, accident, hospitalization, major medical, or other casualty insurance, as a trust investment, and may pay the premiums on such insurance policies as they become due and payable out of either income or principal. On any insurance so purchased, either the Trustee or the Grantor may be the owner and beneficiary thereof.

-3-

§3.  **<u>Distribution of Income and Principal</u>.**  During the lifetime of the Grantor, the Trustee shall distribute such portions of the income and principal of the trust to, for the benefit of, or at the direction of the Grantor as the Grantor from time to time directs.

If the Grantor becomes so incapacitated that, in the opinion of the Trustee, the Grantor cannot exercise the Grantor's rights under the preceding paragraph, the Trustee may distribute such portion or portions of the income or principal of the trust to the Grantor or the Grantor's spouse as the Trustee from time to time deems appropriate in order to support and maintain the distributee in the manner to which such distributee shall have become accustomed or to care for the health of the distributee.  In exercising such power, the Trustee shall avoid making any distribution which would exhaust all assets of the trust.

**§4.** **<u>Termination of Grantor's Right to Revoke, Alter, or Amend</u>.**
Upon the death of the Grantor, this agreement shall become
irrevocable and shall not be subject to alteration or
amendment by any person.

§5.  __Administration of Trust After Death of Grantor__.  After the
Grantor's death, all property which is in the Trustee's
hands at the time of the Grantor's death and all property
which comes into the Trustee's hands as a result of the
Grantor's death shall be administered pursuant to the
provisions of this §5 until such time as it is divided
according to the provisions of §6.

    (a)    The Trustee shall distribute all income earned by the
trust to those of the Grantor's spouse and the
Grantor's children who are then living, in such
proportions as the Trustee deems appropriate in order
to support and maintain such beneficiaries or to care
for the health of such beneficiaries.

    (b)    The Trustee may distribute to or for the benefit of
any one or more of the Grantor's spouse, the Grantor's
children, and the children of any deceased child of
the Grantor such portion or portions of the principal
of the trust as the Trustee from time to time deems
appropriate in order to support and maintain the
distributee in the manner to which he shall have
become accustomed, to care for the health of the
distributee, or to provide the distributee with an
education, including a vocational, college or
postgraduate education.

In determining whether to exercise the power conferred
by this subsection in favor of any particular
prospective distributee, the Trustee shall act as
would a fond and judicious spouse, parent and
grandparent possessed of similar resources, and shall
take into account the other resources which may be
available to both that prospective distributee and all
other prospective distributees, including the
resources of anyone who is legally obligated to
support any prospective distributee and the resources
of the spouse of any prospective distributee.  In
exercising such power, the Trustee shall not be
required to maintain equality among prospective
distributees.

    (c)    If the Grantor's spouse survives the Grantor, then
upon the death of the Grantor's spouse, the Trustee
shall distribute all undistributed income and
principal of the trust to such of the Grantor's
descendants and their spouses, upon such conditions,
in such proportions and estates, and at such time or
times, as the Grantor's spouse shall appoint by will
specifically referring to this power of appointment.

If there is a partial or complete failure of effective appointment by the Grantor's spouse, then, following the death of the Grantor and the Grantor's spouse, the Trustee shall divide and administer such of the aforesaid income and principal as is not effectively appointed in accordance with the provisions of §6.

**§6. <u>Division of Trust into Shares; Administration of Shares</u>.**
Upon the death of the survivor of the Grantor and the
Grantor's spouse, the undistributed income and principal of
the trust shall be divided into a number of separate and
equal shares corresponding to the total number of the
Grantor's children who either are then living or are then
deceased leaving descendants of theirs who are then living.
One such share shall be set aside for each child of the
Grantor who is then living and one such share shall be set
aside for all then living descendants of each child of the
Grantor who is then dead.

Any separate share set aside for the benefit of a child of
the Grantor shall forthwith be distributed to such child.
Any separate share set aside for the benefit of descendants
of a deceased child of the Grantor shall forthwith be
distributed to such descendants, <u>per stirpes</u> (but see §7).
Thereafter, any remaining separate shares shall be
administered as follows:

(a)  The Trustee shall distribute to each child for whom a
share was set aside, in quarterly or more frequent
installments, as may be convenient, all income earned
by such child's share.

(b)  The Trustee may distribute to each child for whom a
share was set aside such portion or portions of the
principal of such child's share as the Trustee from
time to time deems appropriate in order to support and
maintain such child in the manner to which such child
shall have become accustomed, to care for the health
of such child or to provide such child with an
education (including a vocational, college or
postgraduate education).  In determining whether to
exercise the discretionary authority conferred by the
preceding sentence, the Trustee shall take into
account the other resources which may be available to
such child, including the resources of anyone who is
legally obligated to support such child and the
resources of the spouse of such child.

(c)  Upon the death of a child for whom a share was set
aside, the Trustee shall distribute the undistributed
income and remaining principal of such child's share
to such person or persons or entity or entities, other
than such child's estate or creditors, upon such
conditions, in such proportions and estates, and at
such time or times, as such child shall appoint by
will specifically referring to this power of
appointment.

If there is a partial or complete failure of effective appointment by such child, then, upon such child's death, the Trustee shall distribute such of the undistributed income and remaining principal of such child's share as is not effectively appointed as follows:

(i)    If such child is survived by any descendants of his own, all to such descendants, per stirpes (but see §7).

(ii)    If such child is not survived by any descendants of his own, all to the descendants of the Grantor who survive such child, per stirpes, (but see §7), provided that any amount that would be distributed in accordance with the foregoing to a child of the Grantor who has not attained the age which would entitle him to a final distribution hereunder shall, instead, be added to the principal of the share being administered for such child of the Grantor hereunder.

(d)    If no descendants of the Grantor are living at the time the trust is to be divided into shares or at the time a child of the Grantor for whom a share of the trust was set aside dies, as the case may be, and if, in the latter case, there is a partial or complete failure of effective appointment under the provisions of §6(c), above, the Trustee shall then distribute the undistributed income and remaining principal of the trust or such share as follows:

(i)    One-half (1/2) to the heirs of Grantor, in accordance with the Ohio statute of descent and distribution then in effect, as though the Grantor had then died a resident of the State of Ohio.

(ii)    One-half (1/2) to the heirs of the Grantor's spouse, in accordance with the Ohio statute of descent and distribution then in effect, as though the Grantor's spouse had then died a resident of the State of Ohio.

§7. **Continuation of Trust.** If any person, other than the Grantor's spouse, has not attained the age of 25 years or is mentally incompetent at any time as of which the Trustee is required by any provision of this agreement to distribute any property (whether income or principal or both) to such person, the Trustee may, notwithstanding such provision, retain such property in trust for such person until such person attains the age of 25 years or regains mental competence or dies and then distribute such property or what remains thereof to such person or such person's personal representative, as the case may be. While the Trustee is holding any property in trust pursuant to the provisions of the preceding sentence, the Trustee may distribute to the person for whom the Trustee is holding such property such portion or portions thereof or the income derived therefrom as the Trustee from time to time deems appropriate in order to support and maintain such person in the manner to which such person shall have become accustomed, to care for the health of such person, or to provide such person with an education (including a vocational, college or postgraduate education). In determining whether to exercise such power, the Trustee may (but shall not be required to) take into account the other resources which may be available to such person, including the resources of anyone who is legally obligated to support such person and the resources of the spouse of such person.

For a reasonable period of time after the termination of any trust or share created under this agreement, but only until distribution would be necessary to avoid violating any rule of law relating to perpetuities or to the duration of a private trust or to the suspension of the power of alienation, the Trustee may, for administrative convenience, retain in trust the property of such trust or share and continue to exercise all powers, authority, and discretion conferred herein.

§8. <u>**Alienation or Encumbrance of Interests**</u>.  The alienation, encumbrance, attachment, or seizure of any interest in any trust or share created hereunder shall be valid only as to income or principal which is due and owing to the beneficiary of such interest at the time it is accomplished. If any interest in any trust or share created hereunder is alienated, encumbered, attached, or seized, then, notwithstanding any other provisions hereof to the contrary, income shall not thereafter be distributable to the beneficiary of such interest as earned, but only when and to the extent principal is distributable to him, and principal shall not thereafter be distributable to the beneficiary of such interest upon exercise of a right of withdrawal.

§9. **<u>Rule Against Perpetuities</u>.** Notwithstanding anything to the contrary contained elsewhere in this agreement, each trust or share created hereunder shall terminate not later than 21 years after the death of the last to die of the Grantor, the Grantor's spouse, and those of the Grantor's descendants who are living at the time this agreement becomes irrevocable and unamendable. Upon termination of any trust or share pursuant to this section, all property comprising such trust or share shall be distributed, <u>per stirpes</u>, to the persons to whom the income of such trust or share was distributable immediately prior to such termination.

§10. **Powers of Trustee Regarding Investments.**  The Grantor hereby confers broad powers regarding investments upon the Trustee, not only so that the Trustee may, insofar as possible, conserve the dollar value of principal and provide a reasonable income, but also so that the Trustee may, by hedging against inflationary tendencies, attempt to preserve the purchasing power of principal.  By way of illustration, but not of limitation of the foregoing, the Trustee shall have the following powers regarding investments in addition to any inherent, implied, or statutory powers regarding investments that the Trustee may now or hereafter have:

(a)     The Trustee may retain in the same form any property which comes into the Trustee's hands, regardless of the character of such property and of whether it is or shall be authorized by law for investment by trustees and of whether it represents or will represent all or a disproportionately large part of the trust estate.

(b)     The Trustee may maintain an uninvested cash reserve.

(c)     The Trustee may invest the assets of the trust estate in any form or property whatsoever, except a policy of insurance on the life of the Grantor or the Grantor's spouse.  Without limiting the foregoing, the Trustee may invest in stocks, common or preferred; in shares, common or preferred, of investment companies or investment trusts, whether open-end or closed-end; in so-called "common trust funds"; in interests in partnerships, whether as a general or as a limited partner; in real property or interests therein, regardless of where located within the United States of America; and in bonds, notes, and other evidences of indebtedness, regardless of when or whether the same shall mature, and regardless of whether the same are secured or unsecured, and, if secured, regardless of the character of the security and the location of any property constituting the security.

(d)     If there shall come into the Trustee's hands or the Trustee shall invest in any partnership or other unincorporated business enterprise or any share of any such enterprise, the Trustee may operate or participate in the operation of such enterprise in unincorporated form, incorporate or participate in the incorporation of such enterprise and thereafter operate or participate in the operation of such business enterprise in corporate form, cause such enterprise to be sold or liquidated, and, in any case, invest additional assets of the trust estate in such

-13-

enterprise. In operating, selling, liquidating, or investing additional assets of the trust estate in a business enterprise pursuant to the provisions of this paragraph, the Trustee shall not be obliged to comply with any statute or rule of law dealing with such activities by a fiduciary and shall not incur any liability for loss, waste, damage, or diminution in value, provided the Trustee exercises good faith and reasonable prudence.

§11. **Powers of Trustee Regarding Other Matters.**

(a) **Money.** The Trustee may deposit money in a checking or savings account in any bank or other financial institution, with or without disclosing that the money is part of the assets of the trust estate.

(b) **Claims.** The Trustee may, in the Trustee's name or otherwise, demand, sue for, collect, and receive all money and other things of value due and owing to the Trustee or the trust estate and compromise, compound, submit to arbitration, or abandon claims in favor of or against the Trustee or the trust estate upon such terms and conditions as the Trustee deems appropriate. In this connection, the Trustee may extend or otherwise modify any obligations owed to the Trustee or to the trust estate, either before or after maturity and without regard to the value of any underlying security, and, as an incident to the collection of any such obligations, foreclose against any underlying security and bid upon the same in foreclosure sale or acquire any underlying security from the obligor by deed or other instrument of transfer without foreclosure.

(c) **Subdivision and Improvement of Real Property.** The Trustee may subdivide, re-subdivide, or partition any real property comprising part of the trust estate, subject any part or all of such real property to easements, restrictions, or conditions of any kind or character whatsoever, dedicate any part or all of such real property to public use, raze or erect structures of any kind or character whatsoever on any part or all of such real property, or make any other kinds of improvements or any repairs or alterations that he considers appropriate to any part or all of such real property.

(d) **Sale, Lease, and Encumbrance of Real and Personal Property.** The Trustee may, upon such terms and conditions and for such considerations as the Trustee deems acceptable, grant options respecting, sell or exchange at public or private sale, pledge, hypothecate, mortgage, lease, donate, abandon, or otherwise dispose of, deal with, or encumber (for any period of time whatsoever, whether or not ending during the term of the trust) any real or personal property comprising part of the trust estate.

(e) **Dealings with Securities**. The Trustee may cause any security comprising part of the trust estate to be registered in the Trustee's name or in the name of a nominee (with or without disclosure that the security is part of the assets of the trust estate and with or without a power of attorney for the transfer of the security attached) or may take and keep any such security in unregistered form and in such condition that it will pass by delivery. The Trustee may exercise all rights and powers incident to the ownership of any security comprising part of the trust estate, including, without limitation, the following rights and powers: to attend corporate meetings and act upon any and all questions that may come before such meetings; to grant proxies (whether general or special, discretionary or nondiscretionary, personal or assignable); to exercise, dispose of, or waive subscription, conversion, and other similar rights and options; to become a party to voting trust agreements; to consent to or dissent from mergers, consolidations, reorganizations, readjustments of capital structures and sales of assets; to serve as a member of any stockholders' or bondholders' protective or other committee; to delegate discretionary powers to any such committee; and, in connection with any of the foregoing, to pay money, incur obligations, deposit securities, execute and deliver any and all assignments and other instruments, and take any and all other action which to the Trustee may appear to be necessary, desirable, or expedient.

(f) **Life Insurance**. The Trustee may (but shall not be required to) pay or cause to be paid the premiums on any policy of life insurance of which the Trustee is the owner or beneficiary or otherwise see that any such policy of insurance is maintained in force.

Upon being advised of the death of any person under circumstances such that the Trustee will be entitled to receive any proceeds of any policy of insurance upon the life of such person, the Trustee shall take appropriate steps to obtain such sums of money as shall be due to the Trustee under such policy, including multiple indemnity benefits, if any, and then shall hold the same in trust pursuant to the provisions of this agreement. If any policy of insurance upon the life of any person has been pledged as collateral for a loan, the Trustee shall collect only the net proceeds of such policy after the amount due on the loan has been deducted by the lender and

-16-

shall not seek reimbursement from the executor or administrator of the borrower on account of payment of the amount due on the loan out of the gross proceeds of such policy.

The Trustee may utilize and exercise each and every option and privilege existing after the death of an insured by virtue of the terms and provisions of any policy of insurance on the life of such insured, and may enter into any extra-contractual settlement arrangement the Trustee deems appropriate with any insurance company carrying any such policy, and may delay making claim for the proceeds of any such policy until the Trustee has had such time as the Trustee deems necessary to decide whether to exercise any option or privilege provided therein or to arrive at an extra-contractual arrangement with respect thereto.

If any payment on any policy of insurance upon the life of any person is contested, the Trustee shall not be obligated to take any action for collection unless and until the Trustee shall have been indemnified to the Trustee's satisfaction against any loss, liability, or expense, including, without limitation, attorneys' fees, of taking such action. The Trustee may obtain reimbursement from any funds which the Trustee collects on any policy of insurance upon the life of any person for any advance which the Trustee makes for the purpose of effecting collection.

(g)   **Location of Trust Property**.  The Trustee may keep any personal property comprising part of the trust estate at any place or places within the United States of America, either with a depositary or custodian or otherwise.

(h)   **Borrowing**.  On behalf of the trust, the Trustee may borrow money on the credit of the trust estate.

(i)   **Release of Guaranties**.  The Trustee may consent to the modification or release of any guaranty or similar obligation inuring to the benefit of the Trustee or the trust estate.

(j)   **Deeds and Other Instruments**.  The Trustee may execute and deliver such deeds, bills of sale, mortgages, releases, consents and other legal instruments as may be necessary or appropriate to deliver in connection with the administration of the trust estate.

-17-

(k) **Allocation Between Principal and Income.** The Trustee shall decide what is income and what is principal, and whether to charge or credit expenses, gains, losses, premiums, discounts, waste, or appreciation or depreciation in value to income or principal or both, and whether to establish reserves or sinking funds for taxes, assessments, insurance premiums, repairs, improvements, depreciation, or obsolescence, and all similar questions, on the basis of the law of the State of Ohio; provided that, if the law of the State of Ohio on any such question has not been established or is unclear, the Trustee may decide that question in such manner as the Trustee deems just, and the Trustee's decision shall then bind and conclude all interested parties.

(l) **Insurance Against Hazards.** The Trustee may carry such insurance, including public liability and property damage insurance, against such hazards to the Trustee or to the trust estate, in such amounts, and with such insurance companies (whether stock companies or mutual companies) as the Trustee deems advisable.

(m) **Employment of Agents and Others.** The Trustee may employ and compensate out of the trust estate agents, attorneys-in-fact, accountants, brokers, investment counsel, attorneys at law, appraisers, custodians, and other specialists, advisers, and assistants whose services are deemed by the Trustee to be desirable for the proper administration of the trust. The Trustee shall not be liable for any neglect, omission, misconduct, or default of any such person, provided the Trustee shall have selected and retained such person with reasonable care.

(n) **Segregation of Assets.** The Trustee need not segregate the assets of the trust estate until segregation becomes necessary in order to make distributions, but may, until such time, effect the segregation of separate shares of the trust estate by making appropriate entries on the Trustees books of account.

(o) **Distributions.** The Trustee may make distributions in money or in property other than money or in both. Distributions to one beneficiary need not be composed, either individually or in the aggregate, of the same kinds or proportions of property as distributions to any other beneficiary. Distributions in property other than money shall be at the fair market value of such property at the time they are made, as determined

-18-

by the Trustee. If a beneficiary is a minor or mentally incompetent, the Trustee may purchase goods or services for such beneficiary or make distributions for the use of such beneficiary to the natural or legal guardian of such beneficiary. If the Trustee makes distributions for the use of a beneficiary to the natural or legal guardian of such beneficiary, the Trustee shall not be responsible for the disposition by such guardian of the property so distributed.

(p) **Dealings with Related Parties.** The Trustee may self-deal and may have any kind of dealing which the Trustee could have with any other person (including lending money to, borrowing money from, selling assets to, and purchasing assets from) with the Grantor's executor or administrator, any beneficiary of the trust, the personal representative of any beneficiary of the trust, or any corporation, estate, trust, or other entity or organization in which the Trustee has an interest or to which the Trustee stands in any fiduciary or other relationship or which the Trustee represents in any capacity.

(q) **General Powers of Ownership.** In addition to and amplification of all of the particular powers herein conferred upon the Trustee, the Trustee may do anything for the preservation and management of the trust estate that the Trustee deems necessary, desirable, or expedient, and may exercise with respect to the trust estate all powers of an absolute legal and beneficial owner thereof, except only that the Trustee may not apply any part of the trust estate to the Trustee's own use or benefit (but this exception shall not be construed as preventing the payment to the Trustee of reasonable compensation for services as Trustee or of interest at a reasonable rate upon money loaned to the trust or as preventing the payment to any beneficiary of any amount to which such beneficiary may be entitled by virtue of the other provisions of this agreement). The Trustee may act under this agreement without prior notice to any person and without the approval of any court. All powers of the Trustee shall be continuing ones; none shall be exhausted by the exercise or repeated exercise thereof; and a power once exercised may be exercised in a different way and with a different or inconsistent result upon any subsequent exercise thereof.

(r)    **Two or More Trustees.**  Whenever two or more persons including corporations, are serving as Trustee hereunder, the act of a majority of such persons shall be deemed to be the act of all of them (but see §16 with respect to the reliance of third parties on the actions of one Trustee).

§12. **Limitation on Powers of the Trustee.**  Notwithstanding
anything to the contrary contained elsewhere in this trust
agreement:  (a) the Trustee shall not lend money to the
Grantor, the Grantor's spouse, or any corporation or other
entity or organization, except the Grantor's estate, in
which the Grantor or the Grantor's spouse has a substantial
interest, except on adequate rate of interest; (b) the
Trustee shall not otherwise deal with the Grantor, the
Grantor's spouse, or any corporation or other entity or
organization, except the Grantor's estate, in which the
Grantor or the Grantor's spouse has a substantial interest,
except on terms at least as favorable to the Trustee as the
terms the Trustee could obtain from strangers; (c) the
Trustee shall not arbitrarily take any action which would
favor one beneficiary or group of beneficiaries over any
other beneficiary or group of beneficiaries; (d) the Trustee
shall not be required to surrender any assets of the trust
estate upon being tendered substitute assets in exchange
therefor, regardless of the relative values of the assets
involved; and (e) the Trustee shall not exercise any
discretionary power to distribute, apply or expend any
assets of the trust estate to or for the benefit of a
beneficiary if such distribution, application or expenditure
of income or principal will discharge a legal obligation of
support of the Trustee, either directly or indirectly.

§13.  **Records and Accounts.**  The Trustee shall keep accurate
records showing all receipts, disbursements, assets, and
liabilities of the trust estate.  All such records shall be
the property of the Trustee.  During the Grantor's lifetime,
they, together with the evidences of title of the assets of
the trust, shall be open to reasonable inspection by the
Grantor and by any duly accredited representative of the
Grantor.  After the Grantor's death, they, together with the
evidences of title of the assets of the trust and any share
created hereunder, shall be open to reasonable inspection by
any person 18 years of age or over and competent to whom any
income or principal of the trust or any such share must or
may be distributed currently and by any duly accredited
representative of any person to whom any income or principal
of the trust or any such share must or may be distributed
currently.

During the Grantor's lifetime, the Trustee shall render such
written accounts of the administration of the trust to the
Grantor as the Grantor requests.  Following the Grantor's
death the Trustee shall render annual written accounts,
showing the receipts and disbursements of the trust and the
assets held by the trust, and similar information with
respect to any share created hereunder, to any person 18
years of age or over and competent to whom any income or
principal of the trust or any such share must be distributed
currently and to any duly appointed guardian of the estate
of any person to whom any income or principal of the trust
or any such share must or may be distributed currently.

§14. **<u>Fidelity Bond</u>**.  The Trustee shall not be required to furnish any bond to secure the faithful performance of the Trustee's duties hereunder.

§15. **Liability**. The Trustee shall be obligated to exercise good faith and reasonable prudence in the conduct of the trust, but shall not be liable on account of the exercise of any discretion or power hereunder, or on account of any mistake or error of judgment, or otherwise, except for the Trustee's own negligence, dishonesty, or willful breach of trust. The Trustee may purchase any assets of any kind or character whatsoever from the Grantor's estate at their appraised value for estate administration purposes without incurring any liability for any difference between such value and the actual value of the assets involved at the time of purchase. The Trustee may contract in such manner that the Trustee shall be expressly exempted from any individual or personal liability and so that any liability with respect to such contract shall be limited to the trust estate. The Trustee may take any action or refrain from acting in reliance upon the advice of counsel without incurring any liability whatsoever on account of such action or inaction, provided the Trustee selects counsel with reasonable care, but the Trustee shall not be required to procure such advice in order to be entitled to the benefit of any other exculpatory provision in this agreement. The Trustee may rely upon any affidavit, certificate, letter, telegram, other written or oral notice or statement, or other evidence of any kind believed by the Trustee to be genuine and sufficient. So relying, the Trustee shall be protected and saved harmless in making payments or distributions, in taking other actions, or in refraining from action, provided the Trustee's action or inaction is in good faith and without actual knowledge of any changed or different fact, including the changed condition or status of any person to whom the Trustee makes any payment or distribution. No successor trustee shall have any duty to inquire into the administration of the trust by any predecessor or any liability with respect to such administration or any failure of any predecessor fully to account.

§16. **<u>Position of Third Persons Dealing with Trustee</u>.** No purchaser or other person dealing with the Trustee while the Trustee purports to act under any power or authority conferred by this agreement need inquire into the existence of facts upon which such purported power or authority depends or into the question of whether such purported power or authority still subsists. No such person shall be liable for the application of any money or other consideration paid or delivered by him to the Trustee. The Trustee shall have full power to give receipts and discharges.

At any time that Sidney Cywes, Robert Cywes and Colette Cywes are serving together as Trustee hereunder, any purchaser or other person dealing with the Trustee may rely on the act or signature of any of the Trustees as the exercise of the power and authority of the Trustee, and need not request or require the act or signature of the other Trustees to bind the trust.

§17. **Optional Termination.**  The Trustee may terminate any trust or share created hereunder prior to the time provided for such termination herein if the Trustee shall determine, in the Trustee's sole and unfettered discretion, without the approval of any court, that the expense of continuing such trust or share is unreasonably great in relation to the assets thereof and that the termination of such trust or share will not result in unreasonable financial or other inconvenience to the beneficiaries thereof.  In the event of any termination under the provisions of this section, the accumulated income and principal of the trust or share involved, if any, shall be distributed as though the time of such termination was the time otherwise specified herein for termination of such trust or share.

-26-

**§18. <u>Contributions to Trust by Others</u>.** Any person other than the Grantor may name the Trustee a beneficiary of any policy of life insurance. In such case, that person or his assignee shall have, until the death of the insured, all of the powers regarding such insurance which are granted to the Grantor under §1(b) with respect to insurance taken out by the Grantor upon the Grantor's life, and the Trustee shall owe the same duties to that person or his assignee regarding releases and other instruments which the Trustee owes to the Grantor under §1(b) with respect to insurance taken out by the Grantor upon the Grantor's life. Any person other than the Grantor may augment this trust in any or all of the other ways provided in §1(c) for its augmentation by the Grantor. No augmentation by any person other than the Grantor shall in any way affect or impair the provisions of §1(a). If any augmentation by a person other than the Grantor occurs after the trust is divided into shares, the Trustee shall divide and dispose of the property involved in such augmentation as is prescribed in §6, by treating the time at which such augmentation occurs as though it were the time specified in §6 for dividing the trust into shares.

§19. **Successor Trustees**. The Trustee (or any successor trustee) may resign, in which event a successor shall be designated pursuant to the provisions of this section.

Until the Grantor's death, the Grantor, if competent, may remove the Trustee (or any successor trustee) hereunder and designate as Trustee or Trustees hereunder any person or persons, including corporations authorized by law to accept trusts, who or which are residents of the United States of America.

After the death of the Grantor, the Grantor's spouse, if living and competent, may remove any Trustee (or any successor trustee) hereunder and designate as Trustee or Trustees hereunder any person or persons, including corporations authorized by law to accept trusts, who or which are residents of the United States of America.

If any of the original Trustees for any reason become unable or unwilling to serve as such, the remaining Trustees or Trustee (as the case may be) shall continue to serve as Trustee hereunder.

After such time as the trust is divided into shares, as provided in §6, each child of the Grantor for whom a share is set aside shall have the power to appoint, either while living or at death by will, specifically referring to this power of appointment, a successor to his or her powers as Trustee hereunder. If this paragraph does not provide a Trustee for any share for any reason, the other provisions of this §19 shall apply.

After the death of the Grantor, if the Grantor's spouse is incompetent, or, in any event, after the death of the Grantor and the Grantor's spouse, a majority of (a) those of the Grantor's children who are beneficiaries eligible for current distributions hereunder, 18 years of age or over and competent, and (b) the duly appointed guardians of the estates of those of the Grantor's children who are beneficiaries eligible for current distributions hereunder, and less than 18 years of age or incompetent may remove the Trustee (or any successor trustee) hereunder and designate as Trustee hereunder any corporation that is authorized by law to accept trusts, that has gross assets of at least $100,000,000, and that has offices for the conduct of trust business in a state in which any of the aforesaid persons then resides. For purposes of the preceding sentence, if one person is the duly appointed guardian of the estate of two or more of the Grantor's relations, that person shall be treated as two or more persons according to the number of

-28-

the Grantor's relations for whom he is the duly appointed guardian of the estate.

The initial Trustee or any successor Trustee shall be considered to be unable to serve as Trustee if she or he is incompetent. The question of whether a Trustee is "incompetent" shall be determined by two physicians, one of whom shall be the personal physician of the Trustee, if any, on the basis of the Trustee's understanding of the nature of the decisions with respect to this trust which must be made, the circumstances of the people who will be affected by those decisions, and the impact of those decisions on such people. No decision on incompetency shall have any retroactive effect on actions taken or not taken prior to the time it is made. A sworn statement reciting the above conditions from the two physicians and the successor Trustee shall establish the incompetence and any third party may rely on such documentation to identify the Trustee hereunder.

If any corporation serving as Trustee hereunder at any time changes its name or combines under a different name with one or more other corporations authorized by law to accept trusts or sells its assets and business to another corporation authorized by law to accept trusts, the successor or new corporation shall become the Trustee hereunder. Any corporation or person which hereafter becomes the Trustee hereunder shall have all the powers, authority, duties, rights, obligations and immunities that are herein conferred upon the original Trustee.

§20. **Compensation.** Individual Trustees shall serve as Trustee without compensation. Any other Trustee shall be entitled to reasonable compensation for the Trustee's services as such. The compensation for collecting and distributing principal which, under the provisions of this agreement, is unqualifiably distributable upon receipt shall in no event exceed 1/4 of 1% of such principal, provided that, if special circumstances exist which would render such compensation inadequate, or if distribution of principal is delayed for any reason beyond the Trustee's control for more than six (6) months, then the Trustee shall be entitled to such further compensation for the aforesaid services as is reasonable under the circumstances. The compensation for collecting and distributing income from real estate with respect to which a separate management fee is also payable shall in no event exceed 1% of the income collected.

If for any reason, any Trustee (or any successor trustee) entitled to compensation hereunder resigns or is removed and the trust assets are transferred to another trustee pursuant to the provisions of §19, the removed Trustee shall be entitled only to reasonable compensation for work necessitated by the transfer of trust assets and not to a termination or distribution fee.

§21. **Governing Law.** This agreement has been drawn and made effective in the United States of America. All questions concerning the meaning, intention, or validity of this agreement, and all questions relating to performance hereunder, shall be judged and resolved in accordance with the laws of the State of Ohio, the initial situs of the trust.

§22. **Captions.** The captions at the beginning of the several sections and paragraphs of this agreement are not part of this agreement but are only guides to assist in locating and reading such sections and paragraphs. Such captions shall be given no effect in construing this agreement.

§23. **Definitions.** As used herein, "Grantor's spouse" denotes Marlene Cywes. "Grantor's children" refers to Robert Cywes and Colette Cywes. "Descendants" of any person refers to the lineal descendants of any degree of such person born in wedlock or lawfully adopted while a minor either before or after the execution of this agreement or such person's death. "Trustee" denotes the original Trustee and any successor trustee or trustees. "Taxes" includes all interest and penalties imposed with respect to any tax, unless the context specifically requires that it be assigned a more limited meaning. Every pronoun includes corresponding pronouns in the same person of different genders or numbers or both, to the extent the context permits.


IN WITNESS WHEREOF, the Grantor and the Trustees have signed their respective names to duplicate counterparts hereof on the date hereinbefore set forth.

_____
Sidney Cywes, Grantor

_____
Robert Cywes, Trustee

_____
Colette Cywes, Trustee

# CYWES FAMILY

# TRUST AGREEMENT

# PAPPAS GIBSON

9999 Brewster Lane, Suite 101
Powell, Ohio 43065
Phone: (614) 792-7900
Fax: (614) 474-1788
www.pappasgibson.com

**EXHIBIT 2**

# TABLE OF CONTENTS

Recitals.................................................................................................................................1

§1.    Rights of Grantor....................................................................................................2

§2.    Distribution of Income and Principal .....................................................................2

§3.    Termination of Grantor's Right to Revoke, Alter, or Amend.........................................3

§4.    Administration of Trust Upon the Death of Grantor..........................................................3

§5.    Administration of Trust for Robert Cywes ...........................................................3

§6.    Continuation of Trust ..............................................................................................5

§7.    Subdivision of Trust; Administration in Accordance with Tax
       Elections; Generation-Skipping Transfer Taxes; Retirement Plan
       Distributions ...........................................................................................................6

§8.    Alienation or Encumbrance of Interests.................................................................9

§9.    Rule Against Perpetuities ......................................................................................10

§10.   Powers of Trustee Regarding Investments............................................................10

§11.   Powers of Trustee Regarding Other Matters.........................................................11

§12.   Limitations on Powers of the Trustee ...................................................................18

§13.   Records and Accounts............................................................................................18

§14.   Fidelity Bond..........................................................................................................19

§15.   Liability ..................................................................................................................19

§16.   Position of Third Persons Dealing with Trustee ...................................................19

§17.   Optional Termination or Merger ...........................................................................20

§18.   Contributions to Trust by Others...........................................................................20

§19.   Successor Trustees .................................................................................................20

§20.   Compensation.........................................................................................................22

§21.   Governing Law; Place of Administration ...................................................22

§22.   Captions ..........................................................................................................23

§23.   Definitions .......................................................................................................23

Signatures ......................................................................................................................23

# CYWES FAMILY
# TRUST AGREEMENT

This is an amendment and restatement in full of that certain trust agreement known as the Cywes Family Trust dated May 29, 1998, and sometimes referred to as the Sidney Cywes Trust, by and between Sidney Cywes, as the Grantor, and Sidney Cywes, Robert Cywes, and Colette Bentley, as the Trustee. In this amendment and restatement, Sidney Cywes is hereinafter called the "Grantor", and Robert Cywes and Colette Bentley are hereinafter collectively called the "Trustee". This amendment and restatement is made on the date set forth at the end hereof.

<u>Recitals</u>

A.     The Grantor has transferred assets to the Trustee, which the Trustee hereby acknowledges receiving. The Grantor may transfer additional property to the trust by Will or otherwise. The Trustee agrees to accept such property and agrees to hold, manage, and distribute such property under the terms set forth in this Agreement.

B.     The purpose of the Grantor in entering into this agreement is to effectuate a plan for the orderly, businesslike administration of the trust estate for the benefit of the Grantor, the Grantor's wife, the Grantor's son, and others. Broad discretionary powers are conferred upon the Trustee to provide adequate flexibility in carrying out this plan.

C.     The Grantor contemplates that the Grantor may in the future, during the Grantor's lifetime, transfer additional property to the Trustee to be held and administered hereunder; that the Grantor may, by will, bequeath additional property to the Trustee to be held and administered hereunder; and that other persons may, by <u>inter</u> <u>vivos</u> or testamentary transfer, cause additional property to come into the hands of the Trustee to be held and administered hereunder.

D.     Subject to the provisions of §11(d), the Trustee is willing to hold all property that has or may come into the hands of the Trustee hereunder, which property is not disclaimed by the Trustee, and to administer the same according to and subject to the provisions hereof.

E.     Various of the terms used in this agreement are defined, and shall have the meanings set forth in the final section hereof.

The Parties Agree as Follows:

§1.   **Rights of Grantor**.  During the lifetime of the Grantor, the Grantor shall have the following rights:

    (a)    By written notice to the Trustee to:

        (i)    revoke all or any part of this agreement;

        (ii)    withdraw all or any part of the trust's assets; or

        (iii)    alter or amend any term or provision of this agreement, except the Grantor shall have no right or power to change the duties or immunities of the Trustee without the Trustee's written consent.

        A complete revocation of this agreement shall vest all of the trust's assets in the Grantor.  Upon the Grantor's request, the Trustee shall execute and deliver to the Grantor any and all instruments required to transfer to the Grantor any trust asset to which the Grantor may be entitled.

    (b)    Without the Trustee's consent, to obtain or exercise any benefits, values, rights, privileges, or options that may be available under any policy of insurance owned by the Grantor or the Trustee.  Without limiting the generality of the foregoing, the Grantor retains the right, during the lifetime of the Grantor and without the Trustee's consent, from time to time to sell, assign, hypothecate, borrow upon, convert, surrender, or change the beneficiary of any such policy.  Upon the Grantor's request, the Trustee shall execute such releases or other instruments as may be required to enable the Grantor to obtain any benefit or value, or to exercise any right, privilege, or option reserved to the Grantor hereunder.

    (c)    At any time or times to name the Trustee a beneficiary under a policy or policies of insurance upon the Grantor's life or to convey, assign, transfer, appoint, or deliver to the Trustee any additional property, real or personal (including policies of insurance on anyone's life).  The Grantor may also by will devise, bequeath, or appoint to the Trustee any additional property, real or personal (including policies of insurance on anyone's life).  The Trustee shall hold, manage, and distribute all such additional property pursuant to the provisions hereof.

§2.   **Distribution of Income and Principal**.  During the lifetime of the Grantor, the Trustee shall distribute such portion or portions of the income and principal of the trust to or for the benefit of the Grantor as the Grantor from time to time directs.

If the Grantor becomes so incapacitated that, in the opinion of the Trustee, the Grantor cannot exercise the Grantor's rights under the preceding paragraph, the

- 2 -

Trustee may distribute to or for the benefit of the Grantor and the Grantor's wife such portion or portions of the income and principal of the trust as the Trustee from time to time deems appropriate in order to support and maintain the Grantor and the Grantor's wife in the manner to which the Grantor and the Grantor's wife shall have become accustomed or to care for the health and support of the Grantor and the Grantor's wife.

In exercising the foregoing power, the Trustee shall avoid making any distribution that would exhaust all assets of the trust.

§3.     **Termination of Grantor's Right to Revoke, Alter, or Amend**.  Upon the death of the Grantor, this agreement shall become irrevocable and shall not be subject to alteration or amendment by any person.

§4.     **Administration of Trust Upon the Death of Grantor**.  After the death of the Grantor, all property which is in the Trustee's hands at the time of the Grantor's death and all property which comes into the Trustee's hands as a result of or after the Grantor's death, after provision for or payment of all debts, expenses, and taxes chargeable to the trust or property passing outside of the trust to the Grantor's wife, shall be administered as follows:

(a)     The Trustee shall distribute to the Grantor's wife, in quarterly or more frequent installments, as may be convenient, all income earned by the trust after the death of the Grantor and until the death of the Grantor's wife.

(b)     The Trustee may distribute to the Grantor's wife such portion of the principal of the trust as the Trustee from time to time deems appropriate in order to support and maintain the Grantor's wife in the manner to which the Grantor's wife shall have become accustomed or to provide for the health of the Grantor's wife.  In determining whether to exercise this power, the Trustee shall take into account the other resources available to the Grantor's wife, including the resources of anyone who is legally obligated to support the Grantor's wife and the resources of any subsequent husband of the Grantor's wife.

(c)     Upon the death of the Grantor's wife, the Trustee shall administer all undistributed income and principal of the trust in accordance with the provisions of §5.

§5.     **Administration of Trust for Robert Cywes**.  Upon the death of the Grantor and the Grantor's wife, the remaining accumulated income and principal of the trust shall be administered for the benefit of the Grantor's son, Robert Cywes, as follows; provided that, if Robert predeceases the survivor of the Grantor and the Grantor's wife, the

- 3 -

accumulated income and principal of the trust shall forthwith be distributed to Robert's descendants, per stirpes (but see §6):

(a)    The Trustee shall distribute to Robert, in quarterly or more frequent installments, as may be convenient, all income earned by the trust.

(b)    The Trustee may distribute to Robert such portion or portions of the principal of the trust as the Trustee from time to time deems appropriate to support and maintain Robert in the manner to which Robert shall have become accustomed, to care for the health of Robert or to provide Robert with an education. In determining whether to exercise the discretionary authority conferred by the preceding sentence, the Trustee shall take into account the other resources which may be available to Robert, including the resources of anyone who is legally obligated to support Robert and the resources of the spouse of Robert.

(c)    Upon the death of Robert, the Trustee shall distribute all undistributed income and principal of the trust to such person or persons, other than Robert, the estate of Robert, or the creditors of either, upon such conditions, in such proportions and estates, and at such time or times, as Robert shall appoint by will specifically referring to this power of appointment.

If there is a partial or complete failure of effective appointment by Robert, then, following the death of Robert, the Trustee shall distribute such of the undistributed income and principal of the trust as is not effectively appointed as follows:

    (i)    If Robert is survived by any descendants, all to those of the descendants of Robert who survive Robert, per stirpes (but see §6).

    (ii)    If Robert is not survived by any descendants, all to the Grantor's daughter, Colette Bentley, and her descendants, per stirpes (but see §6); provided that, any property that would otherwise be distributed to Colette Bentley shall be held in trust and administered as follows:

        (A)    The Trustee shall distribute to Colette, in quarterly or more frequent installments, as may be convenient, all income earned by the trust.

        (B)    The Trustee may distribute to Colette such portion or portions of the principal of the trust as the Trustee from time to time deems appropriate to support and maintain Colette in the manner to which Colette shall have become accustomed, to care for the health of Colette or to provide Colette with an education. In

determining whether to exercise the discretionary authority conferred by the preceding sentence, the Trustee shall take into account the other resources which may be available to Colette, including the resources of anyone who is legally obligated to support Colette and the resources of the spouse of Colette.

(C)    Upon the death of Colette, the Trustee shall distribute all undistributed income and principal of the trust to such person or persons, other than Colette, the estate of Colette, or the creditors of either, upon such conditions, in such proportions and estates, and at such time or times, as Colette shall appoint by will specifically referring to this power of appointment.

(D)    If there is a partial or complete failure of effective appointment by Colette, then, following the death of Colette, the Trustee shall distribute such of the undistributed income and principal of the trust as is not effectively appointed as follows:

i.    If Colette is survived by any descendants, all to those of the descendants of Colette who survive Colette, per stirpes (but see §6).

ii.    If Colette is not survived by any descendants, all to the heirs of the Grantor under the Ohio statute of descent and distribution as then in effect, as though the Grantor had then died a resident of the State of Ohio.

§6.    **Continuation of Trust**. If any person other than the Grantor and the Grantor's wife is under the age of 30 years, is mentally incompetent, is under any other legal disability, has experienced any drug or alcohol dependency problems within three years, is party to a divorce action in any state not recognizing inheritances as separate property, or will not directly benefit from the distribution (as the result of bankruptcy, insolvency, other creditor problems, or claims or obligations or any kind), at any time as of which the Trustee is required by any provision of this agreement to distribute any property (whether income or principal or both) to such person, the Trustee may, notwithstanding such provision, retain such property in trust for such person until such condition is removed or the person dies and then distribute such property or what remains thereof to such person, in accordance with the effective exercise of any power of appointment granted under this trust agreement to such beneficiary, or to the beneficiaries of such person's estate (without becoming a part thereof or otherwise becoming subject to such person's creditors or the creditors of such person's estate), as the case may be.

- 5 -

While the Trustee is holding any property in trust pursuant to the provisions of the preceding paragraph, the Trustee may distribute to or for the benefit of such person for whom the Trustee is holding such property, such portion or portions thereof or the income derived therefrom as the Trustee from time to time deems appropriate in order to support and maintain such person in the manner to which such person shall have become accustomed, to care for the health of such person, or to provide such person with an education. In determining whether to exercise such power, the Trustee shall take into account the other resources which may be available to such person, including the resources of anyone who is legally obligated to support such person and the resources of the spouse of such person.

For a reasonable period of time after the termination of any trust or share created under this agreement, but only until distribution would be necessary to avoid violating any rule of law relating to perpetuities or to the duration of a private trust or to the suspension of the power of alienation, the Trustee may, for administrative convenience, retain in trust the property of such trust or share and continue to exercise all powers, authority, and discretion conferred herein.

§7. **Subdivision of Trust; Administration in Accordance with Tax Elections; Generation-Skipping Transfer Taxes; Retirement Plan Distributions**.

(a)     The Grantor intends that the federal estate tax marital deduction be used to minimize the estate taxes due from the Grantor's estate or if the Grantor's wife dies within nine months of the Grantor's death, to minimize the estate tax due from both estates. To facilitate use of the marital deduction, the Trustee shall initially divide the trust into shares by setting aside as the "Non-Marital Share Number 1" that fraction of the trust property as selected by the Trustee and valued as of the date that the division is made, of which (i) the numerator is the maximum amount that may pass to someone other than the Grantor's wife hereunder (taking into account all property or interests that pass outside this trust) without creating or otherwise increasing the amount of federal estate tax payable as a result of the Grantor's death (taking into account any exemptions, deductions, and credits allowable, provided that the credit for state death taxes shall be considered only to the extent that they are not thereby incurred or increased), and (ii) the denominator is the federal estate tax value of such trust property.

(b)     In the event that there is a partial election to treat a trust share as qualified terminable interest property pursuant to §2056 of the Internal Revenue Code of 1986, or any successor provisions thereto, the Trustee shall divide such trust share by fractional shares into two separate shares, each to be administered as a separate trust on the same terms, in order to segregate the share for which the election is made. The share for which no election is made shall be referred to

as "Non-Marital Share Number 2". The other share shall be referred to as the "Marital Share".

(c) In the event that the executor of the Grantor's estate desires to make an election to continue to treat the Grantor as the transferor for generation-skipping transfer tax purposes as to a part of the Marital Share, then the Trustee shall further divide such share by fractional shares into two separate shares, each to be administered as a separate trust on the same terms. No principal distribution shall be made from the share for which the Grantor is treated as the transferor for generation-skipping transfer tax purposes (the "Exempt Marital Share") until the other share (the "Non-Exempt Marital Share") has been exhausted.

(d) The Grantor intends that any Marital Share shall be administered in a manner consistent with the Grantor's intent that such property shall qualify for the federal estate tax marital deduction. Any provision of this trust which would otherwise prevent a Marital Share from qualifying for the federal estate tax marital deduction shall not apply to a Marital Share. If any unproductive property is held in a trust intended to qualify for the marital deduction, the Trustee shall, at the request of the Grantor's wife sell, exchange, or otherwise dispose of said property and acquire income producing property.

(e) The Grantor intends to eliminate any generation-skipping transfer taxes on transfers of property pursuant to this Agreement. Therefore, if any trust share would otherwise have an Inclusion Ratio of something other than zero or one, then such trust share shall be divided by fractional shares into two separate trust shares, one with an Inclusion Ratio of zero (the "Exempt Share") and one with an Inclusion Ratio of one (the "Non-Exempt Share"). "Inclusion Ratio" shall have the meaning as defined for purposes of the federal generation-skipping transfer tax created by the provisions of the Internal Revenue Code, as amended, and to their subsequent counterparts under any future federal tax law.

In order to minimize the total amount of all transfer taxes due with respect to a transfer from a trust held for the Grantor's descendants, any Non-Exempt Share shall vest in the beneficiary of such share (or in the person who would be the beneficiary thereof but for the application of §8) by granting such beneficiary, upon his or her death, the power to appoint, by will specifically referring to this power of appointment, such share to or for the benefit of anyone, including such beneficiary's estate, but only to the extent that such vesting will reduce the combined amount of (i) the sum of the federal and any other generation-skipping transfer taxes due as a result of a transfer from the Non-Exempt Share, and (ii) the sum of all estate, inheritance and other death

- 7 -

taxes (except generation-skipping taxes) due as a result of such beneficiary's death. Any portion or portions of such beneficiary's Non-Exempt Share which is not effectively appointed shall be treated as provided in this Agreement for disposition upon such beneficiary's death.

If a son of the Grantor survives the Grantor but dies prior to the death of the Grantor's wife and such son is survived by any descendants, any division of the trust shares, to the extent possible, shall be made disproportionately from any Exempt and Non-Exempt Shares so that shares for the descendants of the Grantor's son are funded first with property from the Non-Exempt Marital Share and then from Exempt Shares.

(f) Notwithstanding any other provisions of this trust, if the Trustee is named as the beneficiary of any qualified retirement plan benefit or individual retirement arrangement, the Trustee shall make such elections and take such actions as may be required or become advisable to assure that (i) any retirement plan benefits or individual retirement arrangements of the Grantor that are payable to a trust or share intended to qualify for the marital deduction will be eligible (subject to any elections to be made by the executor of the Grantor's estate), to the greatest extent possible, for the federal estate tax marital deduction, (ii) any retirement plan benefits or individual retirement arrangements of the Grantor that are payable to a trust or share of which a descendant of the Grantor is a beneficiary will be able to treat the beneficiary of the trust or share as the beneficiary of the benefits and arrangements for purposes of calculating the required minimum distributions therefrom, and (iii) any retirement plan benefits or individual retirement arrangements of the Grantor that are payable to a trust or share of which more than one descendant of the Grantor is a beneficiary will be subdivided into a separate trust share for each descendant and each separate trust share will be able to treat the beneficiary of such share as the beneficiary of the benefits and arrangements for purposes of calculating the required minimum distributions therefrom.

Upon the receipt of retirement plan distributions that are taxable for income tax purposes, the Trustee shall retain as principal of the trust such portions of the distributions as constitute the corpus of the retirement plan, subject to the requirement that the Trustee treat the beneficiary of the trust or share as the beneficiary of the benefits and arrangements. The portion of each distribution that represents income shall be paid to the income beneficiary in the same manner as any income generated by other assets held by the Trustee.

The Trustee shall take the steps necessary to obtain a form of payment designation that provides distributions to the trust each year of an amount no less than the greater of (i) the income generated by the assets representing the

accrued benefit in the qualified retirement plan or the individual retirement arrangement, if the Grantor's wife is the income beneficiary thereof, or (ii) the minimum distribution amount determined under §401(a)(9) of the Internal Revenue Code of 1986, or any subsequent provision of similar effect.

In the event a trust share for the benefit of a specific descendant of the Grantor is named as the beneficiary of any qualified retirement plan benefit or individual retirement arrangement and such descendant is not living at such time as the qualified retirement plan benefit or individual retirement arrangement comes into the hands of the Trustee, then the Trustee shall divide such qualified retirement plan benefit or individual retirement arrangement among such descendant's descendants who are then living, per stirpes, or, if such descendant is not survived by descendants of his or her own, then in accordance with the provisions of this trust agreement that would apply if such descendant did not survive the Grantor and was not survived by descendants of his or her own who survived the Grantor, and the remaining provisions of this (f) shall apply to such qualified retirement plan benefit or individual retirement arrangement.

(g) In addition to the specific provisions above, the Trustee may divide any trust or share on a fractional basis into two or more separate trusts or shares or segregate as a separate share or trust a portion of a trust or share or specific assets from a trust or share for any reason in a manner consistent with any applicable laws or regulations. In administering the trust property of any separate share or trust and in making applicable tax elections, the Trustee shall consider federal and state tax law and all other factors the Trustee believes pertinent, and may make disproportionate distributions from the separate trusts created.

(h) The Trustee may combine into a single trust share any trust shares which were originally created to take into account different tax elections, but which have come to have the same tax attributes, provided that no change in beneficial interest is effected thereby.

§8. **Alienation or Encumbrance of Interests**. The alienation, encumbrance, attachment, or seizure of any interest in any trust or share created hereunder shall be valid only as to income or principal which is due and owing to the beneficiary of such interest at the time it is accomplished. If any interest in any trust or share created hereunder is alienated, encumbered, attached, or seized, then, notwithstanding any other provisions hereof to the contrary, income shall not thereafter be distributed to the beneficiary of such interest as earned, but only when and to the extent principal is distributed to such beneficiary, and principal shall not thereafter be distributable to the beneficiary of such interest upon exercise of a right of withdrawal. This trust is intended to hold the

- 9 -

interests of the beneficiaries subject to a spendthrift trust pursuant to §5805.01 of the Ohio Revised Code.

§9.     **Rule Against Perpetuities**.  Notwithstanding anything to the contrary contained elsewhere in this agreement, the rule against perpetuities codified in §2131.08 of the Ohio Revised Code shall not apply to this trust.

§10.    **Powers of Trustee Regarding Investments**.  As long as the Grantor is alive and competent, the Trustee shall invest the assets of the trust estate only as directed by the Grantor.  If the Grantor becomes incompetent or ceases to serve as Trustee, any other or successor Trustee may invest the assets of the trust estate in the same manner in which they were invested by the Grantor, and shall not be liable for any losses incurred by the trust estate as a result of following the Grantor's investment instructions or manner of investing.

While the Grantor is alive, the Trustee may purchase and maintain insurance on the life of the Grantor, as well as health, accident, hospitalization, major medical, or other casualty insurance, as a trust investment, and may pay the premiums on such insurance policies as they become due and payable out of either income or principal.  On any insurance so purchased, either the Trustee or the Grantor may be the owner and beneficiary thereof.

The Grantor hereby confers broad powers regarding investments upon the Trustee, not only so that the Trustee may, insofar as possible, conserve the dollar value of principal and provide a reasonable income, but also so that the Trustee may, by hedging against inflationary tendencies, attempt to preserve the purchasing power of principal.  By way of illustration, but not of limitation of the foregoing, the Trustee shall have the following powers regarding investments in addition to any inherent, implied, or statutory powers regarding investments that the Trustee may now or hereafter have:

(a)     The Trustee may retain in the same form any property which comes into the Trustee's hands, regardless of the character of such property and of whether it is or shall be authorized by law for investment by trustees and of whether it represents or will represent all or a disproportionately large part of the trust estate.

(b)     The Trustee may maintain an uninvested cash reserve.

(c)     The Trustee may invest the assets of the trust estate in any form or property whatsoever.  Without further limiting the foregoing, the Trustee may invest in stocks, common or preferred; in shares, common or preferred, of investment companies or investment trusts, whether open-end or closed-end; in so-called "common trust funds"; in interests in partnerships, whether as a general or as a

- 10 -

limited partner, including hedge funds; in options of any kind; in real property or interests therein, regardless of where located; in Internal Revenue Code Section 529 Plans, or any similar or successor provision thereto, for the benefit of a beneficiary hereunder who is under the age of 21 years; and in bonds, notes, and other evidences of indebtedness, regardless of when or whether the same shall mature, and regardless of whether the same are secured or unsecured, and, if secured, regardless of the character of the security and the location of any property constituting the security.  The Trustee may also pledge, margin, or otherwise use any of the assets of the trust as security for borrowing by the trust.

(d)    If there shall come into the Trustee's hands or the Trustee shall invest in any partnership or other unincorporated business enterprise or any share of any such enterprise, the Trustee may operate or participate in the operation of such enterprise in unincorporated form, incorporate or participate in the incorporation of such enterprise and thereafter operate or participate in the operation of such business enterprise in corporate form, cause such enterprise to be sold or liquidated, and, in any case, invest additional assets of the trust estate in such enterprise.  In operating, selling, liquidating, or investing additional assets of the trust estate in a business enterprise pursuant to the provisions of this paragraph, the Trustee shall not be obliged to comply with any statute or rule of law dealing with such activities by a fiduciary and shall not incur any liability for loss, waste, damage, or diminution in value, and, except as otherwise modified by the next sentence, provided the Trustee exercises good faith and reasonable prudence.  Specifically, the Trustee may retain as a proper trust investment any interest in a business enterprise in which the Grantor or the Grantor's family have been actively involved without regard to rules requiring diversification of investment and without liability for depreciation in value, even if it is a larger percentage of the trust assets than might otherwise be prudent.

## §11.   **Powers of Trustee Regarding Other Matters**.

(a)    **Money.**  The Trustee may deposit money in a checking or savings account in any bank or other financial institution, with or without disclosing that the money is part of the assets of the trust estate.

(b)    **Claims.**  The Trustee may, in the Trustee's name or otherwise, demand, sue for, collect, and receive all money and other things of value due and owing to the Trustee or the trust estate and compromise, compound, submit to arbitration, or abandon claims in favor of or against the Trustee or the trust estate upon such terms and conditions as the Trustee deems appropriate.  In this connection, the Trustee may extend or otherwise modify any obligations

- 11 -

owed to the Trustee or to the trust estate, either before or after maturity and without regard to the value of any underlying security, and, as an incident to the collection of any such obligations, foreclose against any underlying security and bid upon the same in foreclosure sale or acquire any underlying security from the obligor by deed or other instrument of transfer without foreclosure.

(c)  **Subdivision and Improvement of Real Property.**  The Trustee may subdivide, re-subdivide, or partition any real property comprising part of the trust estate, subject any part or all of such real property to easements, restrictions, or conditions of any kind or character whatsoever, dedicate any part or all of such real property to public use, raze or erect structures of any kind or character whatsoever on any part or all of such real property, or make any other kinds of improvements or any repairs or alterations that the Trustee considers appropriate to any part or all of such real property.

(d)  **Assessment and Resolution of Environmental Issues**. The Trustee may take into account any environmental law that may be relevant to any real estate included in the trust.  By way of illustration, but not of limitation of the foregoing, the Trustee shall have the following powers regarding the assessment and resolution of environmental issues:

(i)  The Trustee may designate one or more Special Trustees to serve with respect to any real estate included in the trust, which Special Trustee shall have all of the powers, authority, duties, rights, obligations and immunities that are conferred upon the Trustee pursuant to (ii) through (ix), below.  The Trustee may compensate the Special Trustee out of the trust estate and shall not be liable for any neglect, omission, misconduct, or default of the Special Trustee.  Any Special Trustee designated by the Trustee may be removed, with or without cause, by the Trustee, in which case another Special Trustee may be appointed.

(ii)  The Trustee may create a separate entity, which shall be owned by the trust or shares created hereunder, and transfer to such entity any real estate included in the trust.

(iii)  The Trustee may inspect property owned or acquired by the Trustee, or property which the Trustee is considering owning or acquiring, including property which is part of any interests in incorporated or unincorporated business entities, to measure the environmental risks associated with such property, to comply with environmental laws affecting such property, or to respond to a change in, or any actual or threatened violation of, any environmental law affecting such property.

- 12 -

(iv) The Trustee may appropriately respond to a change in, or prevent, abate or otherwise remedy any actual or threatened violation of any environmental law affecting such property, either before or after the initiation of an enforcement action by any governmental body.

(v) The Trustee may refuse to accept the transfer to the trust of property if the Trustee determines that such property either is or may reasonably be believed to be contaminated by any hazardous substance that could result in liability to the trust.

(vi) The Trustee may disclaim any power granted by any document, statute or rule of law that, in the discretion of the Trustee, may reasonably be expected to cause the Trustee to incur personal liability under any environmental law.

(vii) The Trustee may charge the cost of any inspection, response or other action against the income or principal of the trust.

(viii) The Trustee shall not be personally liable to any beneficiary for any decrease in value because of the compliance by the Trustee with any environmental law, including any reporting requirement. Neither the acceptance by the Trustee of property nor the failure by the Trustee to inspect property shall create any inference as to whether or not there is or may be any liability under any environmental law with respect to such property.

(ix) As used herein, "environmental law" means any federal, state or local law relating to the protection of the environment or human health, and "hazardous substances" means any substances defined as hazardous or toxic or otherwise regulated by any environmental law.

(e) **Sale, Lease, and Encumbrance of Real and Personal Property.** The Trustee may, upon such terms and conditions and for such considerations as the Trustee deems acceptable, grant options respecting, sell or exchange at public or private sale, pledge, hypothecate, mortgage, lease, donate, abandon, or otherwise dispose of, deal with, or encumber (for any period of time whatsoever, whether or not ending during the term of the trust) any real or personal property comprising part of the trust estate.

(f) **Dealings with Securities.** The Trustee may cause any security comprising part of the trust estate to be registered in the Trustee's name or in the name of a nominee (with or without disclosure that the security is part of the assets of the trust estate and with or without a power of attorney for the transfer of the security attached) or may take and keep any such security in unregistered form

- 13 -

and in such condition that it will pass by delivery. The Trustee may exercise all rights and powers incident to the ownership of any security comprising part of the trust estate, including, without limitation, the following rights and powers: to attend corporate meetings and act upon any and all questions that may come before such meetings; to grant proxies (whether general or special, discretionary or nondiscretionary, personal or assignable); to exercise, dispose of, or waive subscription, conversion, and other similar rights and options; to become a party to voting trust agreements; to consent to or dissent from mergers, consolidations, reorganizations, readjustments of capital structures and sales of assets; to serve as a member of any stockholders' or bondholders' protective or other committee; to delegate discretionary powers to any such committee; and, in connection with any of the foregoing, to pay money, incur obligations, deposit securities, execute and deliver any and all assignments and other instruments, and take any and all other action which to the Trustee may appear to be necessary, desirable, or expedient.

(g)    **Life Insurance.** The Trustee may (but shall not be required to) pay or cause to be paid the premiums on any policy of life insurance of which the Trustee is the owner or beneficiary or otherwise see that any such policy of insurance is maintained in force.

Upon being advised of the death of any person under circumstances such that the Trustee will be entitled to receive any proceeds of any policy of insurance upon the life of such person, the Trustee shall take appropriate steps to obtain such sums of money as shall be due to the Trustee under such policy, including multiple indemnity benefits, if any, and then shall hold the same in trust pursuant to the provisions of this agreement. If any policy of insurance upon the life of any person has been pledged as collateral for a loan, the Trustee shall collect only the net proceeds of such policy after the amount due on the loan has been deducted by the lender and shall not seek reimbursement from the executor or administrator of the borrower on account of payment of the amount due on the loan out of the gross proceeds of such policy.

The Trustee may utilize and exercise each and every option and privilege existing after the death of an insured by virtue of the terms and provisions of any policy of insurance on the life of such insured, and may enter into any extra-contractual settlement arrangement the Trustee deems appropriate with any insurance company carrying any such policy, and may delay making claim for the proceeds of any such policy until the Trustee has had such time as the Trustee deems necessary to decide whether to exercise any option or privilege provided therein or to arrive at an extra-contractual arrangement with respect thereto.

If any payment on any policy of insurance upon the life of any person is contested, the Trustee shall not be obligated to take any action for collection unless and until the Trustee shall have been indemnified to the Trustee's satisfaction against any loss, liability, or expense, including, without limitation, attorneys' fees, of taking such action. The Trustee may obtain reimbursement from any funds which the Trustee collects on any policy of insurance upon the life of any person for any advance which the Trustee makes for the purpose of effecting collection.

(h) **Location of Trust Property.** The Trustee may keep any personal property comprising part of the trust estate at any place or places within the United States or abroad, either with a depositary or custodian or otherwise.

(i) **Borrowing.** On behalf of the trust, the Trustee may borrow money on the credit of the trust estate.

(j) **Release of Guaranties.** The Trustee may consent to the modification or release of any guaranty or similar obligation inuring to the benefit of the Trustee or the trust estate.

(k) **Deeds and Other Instruments.** The Trustee may execute and deliver such deeds, bills of sale, mortgages, releases, consents, and other legal instruments as may be necessary or appropriate to deliver in connection with the administration of the trust estate.

(l) **Allocation Between Principal and Income.** The Trustee shall decide what is income and what is principal. Notwithstanding otherwise applicable law, the Trustee shall charge or credit trustee compensation, investment, advisory or custodial fees, accounting fees, attorney fees, and regular or ordinary expenses first to income and then to principal. The Trustee shall decide whether to allocate gains, losses, premiums, discounts, waste, or appreciation or depreciation in value to income or principal or both, and whether to establish reserves or sinking funds for taxes, assessments, insurance premiums, repairs, improvements, depreciation, or obsolescence, and all similar questions, on the basis of the law of the State of Ohio; provided that, if the law of the State of Ohio on any such question has not been established or is unclear, the Trustee may decide that question in such manner as the Trustee deems just, and the Trustee's decision shall then bind and conclude all interested parties.

(m) **Insurance Against Hazards.** The Trustee may carry such insurance, including public liability and property damage insurance, against such hazards to the Trustee or to the trust estate, in such amounts, and with such insurance companies (whether stock companies or mutual companies) as the Trustee deems advisable.

- 15 -

(n) **Employment of Agents and Others.** The Trustee may employ and compensate out of the trust estate agents, attorneys-in-fact, accountants, brokers, investment counsel, attorneys at law, appraisers, custodians, and other specialists, advisers, and assistants whose services are deemed by the Trustee to be desirable for the proper administration of the trust. The Trustee shall not be liable for any neglect, omission, misconduct, or default of any such person, provided the Trustee shall have selected and retained such person with reasonable care.

(o) **Segregation of Assets.** The Trustee need not segregate the assets of the trust estate until segregation becomes necessary in order to make distributions, but may, until such time, effect the segregation of separate shares of the trust estate by making appropriate entries on the Trustee's books of account.

(p) **Distributions.** The Trustee may make distributions in money or in property other than money or in both. Distributions to one beneficiary need not be composed, either individually or in the aggregate, of the same kinds or proportions of property as distributions to any other beneficiary. Distributions in property other than money shall be at the fair market value of such property at the time they are made, as determined by the Trustee. If a beneficiary is under the age of 21 years or mentally incompetent, the Trustee may purchase goods or services for such beneficiary or make distributions (i) for the benefit of such beneficiary, (ii) to the natural or legal guardian of such beneficiary, (iii) to any person then serving or named by the Trustee to serve as custodian for such beneficiary under the Ohio Transfers to Minors Act or other applicable gift for minors act, or (iv) to one or more owners, who are either chosen by or acceptable to the Trustee, of an Internal Revenue Code 529 plan or any similar or successor provision thereto for the benefit of such beneficiary. If the Trustee makes distributions for the benefit of a beneficiary to the natural or legal guardian of such beneficiary, to a custodian, or to the owner or owners of an Internal Revenue Code 529 plan or any similar or successor provision thereto, the Trustee shall not be responsible for the disposition by such guardian, custodian, or owner of the property so distributed.

(q) **Dealings with Related Parties.** The Trustee may self-deal and may have any kind of dealing which the Trustee could have with any other person (including lending money to, borrowing money from, selling assets to, and purchasing assets from) with the Grantor's executor or administrator, any beneficiary of the trust, the personal representative of any beneficiary of the trust, or any corporation, estate, trust, or other entity or organization in which the Trustee has an interest or to which the Trustee stands in any fiduciary or other relationship or which the Trustee represents in any capacity.

- 16 -

(r)     **General Powers of Ownership.**  In addition to and amplification of all of the particular powers herein conferred upon the Trustee, the Trustee may do anything for the preservation and management of the trust estate that the Trustee deems necessary, desirable, or expedient, and may exercise with respect to the trust estate all powers of an absolute legal and beneficial owner thereof, except only that the Trustee may not apply any part of the trust estate to the Trustee's own use or benefit (but this exception shall not be construed as preventing the payment to the Trustee of reasonable compensation for services as Trustee or of interest at a reasonable rate upon money loaned to the trust or as preventing the payment to any beneficiary of any amount to which such beneficiary may be entitled by virtue of the other provisions of this agreement).  The Trustee may also disclaim or abandon any interest in property (real or personal) which is in the Trustee's hands at the time of the Grantor's death or which comes into the Trustee's hands as a result of or after the Grantor's death.  The Trustee may act under this agreement without prior notice to any person and without the approval of any court.  All powers of the Trustee shall be continuing ones; none shall be exhausted by the exercise or repeated exercise thereof; and a power once exercised may be exercised in a different way and with a different or inconsistent result upon any subsequent exercise thereof.

(s)     **Two or More Trustees.**  Whenever two or more persons, including corporations, are serving as Trustee hereunder, the act of a majority of such persons shall be deemed to be the act of all of them; provided that, if Robert Cywes is serving as the Trustee or a Co-Trustee, Robert Cywes shall have authority to make all investment decisions on behalf of the trust, without any action by the other Co-Trustee.

(t)     **Digital Assets.**  The Trustee shall have full authority and power to access, use, and take control of all electronic and computer equipment, including, but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar equipment that receives, stores, processes, or sends electronic data and records; to access, modify, delete, control, transfer, and otherwise deal with digital assets, including, but not limited to, emails, documents, images, audio, video, software licenses, domain registrations, and similar digital files, regardless of the ownership of the physical device upon which the digital asset is stored; to access, modify, delete, control, transfer, and otherwise deal with, any digital accounts, including, but not limited to, email accounts, file sharing accounts, financial management accounts, domain registration accounts, domain name service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, and other online accounts; provided, however, that the Trustee shall have no duty or obligation to review any electronic or

- 17 -

computer equipment, and the Trustee's judgment as to the actions to take or not take in regard to any digital asset shall not be subject to review.

(u) **Powers Granted in Ohio Trust Code**.  In addition to all of the powers herein conferred upon the Trustee and except as otherwise limited in this agreement, the Trustee has all of the powers granted by the Ohio Trust Code and the Ohio Uniform Principal and Income Act, as amended and in effect at the time of exercise of the power.

§12.  **Limitations on Powers of the Trustee**.  Notwithstanding anything to the contrary contained elsewhere in this trust agreement:  (a) the Trustee shall not arbitrarily take any action which would favor one beneficiary or group of beneficiaries over any other beneficiary or group of beneficiaries; (b) the Trustee shall not be required to surrender any assets of the trust estate upon being tendered substitute assets in exchange therefor, regardless of the relative values of the assets involved; and (c) the Trustee shall not exercise any discretionary power to distribute, apply or expend any assets of the trust estate to or for the benefit of a beneficiary if such distribution, application or expenditure of income or principal will discharge a legal obligation of support of the Trustee, either directly or indirectly.

§13.  **Records and Accounts**.  The Trustee shall keep accurate records showing all receipts, disbursements, assets, and liabilities of the trust estate.  All such records shall be the property of the Trustee.  During the Grantor's lifetime, they, together with the evidences of title of the assets of the trust, shall be open to reasonable inspection by the Grantor and by any duly accredited representative of the Grantor.  After the death of the Grantor, they, together with the evidences of title of the assets of the trust and any share created hereunder, shall be open to reasonable inspection by any person 18 years of age or over and competent to whom any income or principal of the trust or any such share must or may be distributed currently and by any duly accredited representative of any person to whom any income or principal of the trust or any such share must or may be distributed currently.

During the Grantor's lifetime, the Trustee shall render such written accounts of the administration of the trust to the Grantor as the Grantor requests.  Following the death of the Grantor, the Trustee shall render annual written accounts, showing the receipts and disbursements of the trust and the assets held by the trust, and similar information with respect to any share created hereunder, to any person 18 years of age or over and competent to whom any income or principal of the trust or any such share must be distributed currently and to any duly appointed guardian of the estate of any person to whom any income or principal of the trust or any such share must or may be distributed currently.

- 18 -

Except as specifically set forth above, the Grantor, to the full extent permitted by law, does hereby waive any provision of law otherwise requiring the Trustee to notify any beneficiary (i) of the existence of this trust or of its becoming irrevocable upon the death of the Grantor, (ii) of acceptance and identification of a Trustee, (iii) of any change in the method or rate of determining the Trustee's compensation, and (iv) of any right to receive or request the Trustee's reports. The Grantor, to the full extent permitted by law, does also waive any provision of law otherwise requiring the Trustee to furnish to any beneficiary (i) a copy of the trust instrument on request, or (ii) trust reports and other information periodically or on request.

§14. **Fidelity Bond**. The Trustee shall not be required to furnish any bond to secure the faithful performance of the Trustee's duties hereunder.

§15. **Liability**. The Trustee shall be obligated to exercise good faith and reasonable prudence in the conduct of the trust, but shall not be liable on account of the exercise of any discretion or power hereunder, or on account of any mistake or error of judgment, or otherwise, except for the Trustee's own negligence, dishonesty, or willful breach of trust. The Trustee may purchase any assets of any kind or character whatsoever from the Grantor's estate at their appraised value for estate administration purposes without incurring any liability for any difference between such value and the actual value of the assets involved at the time of purchase. The Trustee may contract in such manner that the Trustee shall be expressly exempted from any individual or personal liability and so that any liability with respect to such contract shall be limited to the trust estate. The Trustee may take any action or refrain from acting in reliance upon the advice of counsel without incurring any liability whatsoever on account of such action or inaction, provided the Trustee selects counsel with reasonable care, but the Trustee shall not be required to procure such advice in order to be entitled to the benefit of any other exculpatory provision in this agreement. The Trustee may rely upon any affidavit, certificate, letter, telegram, other written or oral notice or statement, or other evidence of any kind believed by the Trustee to be genuine and sufficient. So relying, the Trustee shall be protected and saved harmless in making payments or distributions, in taking other actions, or in refraining from action, provided the Trustee's action or inaction is in good faith and without actual knowledge of any changed or different fact, including the changed condition or status of any person to whom the Trustee makes any payment or distribution. No successor trustee shall have any duty to inquire into the administration of the trust by any predecessor or any liability with respect to such administration or any failure of any predecessor fully to account.

§16. **Position of Third Persons Dealing with Trustee**. No purchaser or other person dealing with the Trustee while the Trustee purports to act under any power or authority conferred by this agreement need inquire into the existence of facts upon which such purported power or authority depends or into the question of whether such

- 19 -

purported power or authority still subsists. No such person shall be liable for the application of any money or other consideration paid or delivered by him to the Trustee. The Trustee shall have full power to give receipts and discharges.

§17. **Optional Termination or Merger**. At any time after the death of the Grantor, the Trustee, if such Trustee is not then a beneficiary hereunder, may terminate any trust or share created hereunder prior to the time provided for such termination herein if the Trustee shall determine, in the Trustee's sole, absolute, and unfettered discretion, without the approval of any court, that the expense of continuing such trust or share is unreasonably great in relation to the assets thereof and that the termination of such trust or share will not result in unreasonable financial or other inconvenience to the beneficiaries thereof. In the event of any termination under the provisions of this section, the accumulated income and principal of the trust or share involved, if any, shall be distributed as though the time of such termination was the time otherwise specified herein for termination of such trust or share; provided that, if the Trustee determines, in the Trustee's sole, absolute, and unfettered discretion, that a distribution to any beneficiary who is under the age of 21 does not exceed the expected cost of an education for such beneficiary, the Trustee may instead distribute the accumulated income and principal of the trust or share involved to one or more owners, who are either chosen by or acceptable to the Trustee, of an Internal Revenue Code 529 plan or any similar or successor provision thereto for the benefit of such beneficiary or beneficiaries.

After the death of the Grantor, if the Trustee of any trust or share held hereunder is also trustee of any trust established by the Grantor or the Grantor's wife, and the beneficiaries and the operative terms of both trusts are substantially the same, the Trustee may merge either trust into the other trust.

§18. **Contributions to Trust by Others**. Any person other than the Grantor may augment this trust. If such augmentation occurs after the death of the Grantor, the Trustee shall administer and distribute the property involved in such augmentation as is prescribed in §5, as though the Grantor had then died.

§19. **Successor Trustees**. The Trustee (or any successor trustee) may resign, in which event a successor shall be designated pursuant to the provisions of this section.

Until the Grantor's death, the Grantor, if competent, may remove, with or without cause, the Trustee (or any successor trustee) hereunder and designate as Trustee or Trustees hereunder one or more person or persons, including corporations authorized by law to accept trusts, that the Grantor may select.

After the death or incompetence of the Grantor, the Grantor's wife, if competent, may remove, with or without cause, the Trustee (or any successor thereto) hereunder and

- 20 -

designate as Trustee or Trustees hereunder one or more person or persons, including corporations authorized by law to accept trusts, that the Grantor's wife may select.

After the death or incompetence of the Grantor's wife, the last to serve of Robert Cywes and Colette Bentley may appoint, either while living or at death by will, one or more person or persons, including corporations authorized by law to accept trusts, as successor to his or her powers as Trustee hereunder.

If either original Trustees for any reason becomes unable or unwilling to serve as such, and a successor is not designated as is hereinabove provided, the other original Trustee shall become the sole Trustee hereunder.

If the other provisions of this section fail to provide for a successor Trustee, after the death of the Grantor, a majority of (a) those of the beneficiaries eligible for current distributions hereunder, 18 years of age or over and competent, and (b) the duly appointed guardians (other than any former spouse of a descendant of the Grantor) of the estates of those of the beneficiaries eligible for current distributions hereunder, and less than 18 years of age or incompetent, may designate as successor Trustee hereunder one or more person or persons, including corporations authorized by law to accept trusts, provided that individual successor Trustees must have attained the age of 30 years. For purposes of the preceding sentence, if one person is the duly appointed guardian of the estate of two or more of the beneficiaries, that person shall be treated as two or more persons according to the number of the beneficiaries for whom he is the duly appointed guardian of the estate.

The initial Trustee or any successor Trustee shall be considered to be unable to serve as Trustee if she or he is incompetent. The question of whether a Trustee is "incompetent" shall be determined by two physicians, one of whom shall be the personal physician of the Trustee, if any, on the basis of the Trustee's understanding of the nature of the decisions with respect to this trust which must be made, the circumstances of the people who will be affected by those decisions, and the impact of those decisions on such people; in the case of the initial Trustee, absentmindedness and speed and agility of thinking shall be ignored. The initial Trustee and any successor Trustee, by agreeing to serve as Trustee, specifically authorize the release of any and all "individually identifiable health information", including any "protected health information" (as those terms are defined in the regulations under the Health Insurance Portability and Accountability Act of 1996 at 45 CFR §160.103) reasonably necessary for purposes of determining whether the Trustee is incompetent. No decision on incompetency shall have any retroactive effect on actions taken or not taken prior to the time it is made. A sworn statement reciting the above conditions from the two physicians and the successor Trustee shall establish the incompetence and any third party may rely on such documentation to identify the Trustee hereunder.

If any corporation serving as Trustee hereunder at any time changes its name or combines under a different name with one or more other corporations authorized by law to accept trusts or sells its assets and business to another corporation authorized by law to accept trusts, the successor or new corporation shall become the Trustee hereunder. Any corporation or person which hereafter becomes the Trustee hereunder shall have all the powers, authority, duties, rights, obligations and immunities that are herein conferred upon the original Trustee.

§20. **Compensation**. Individual Trustees who are descendants of the Grantor shall serve as Trustee without compensation. Any other Trustee shall be entitled to reasonable compensation for the Trustee's services as such. The compensation for collecting and distributing principal which, under the provisions of this agreement, is unqualifiably distributable upon receipt shall in no event exceed 1/4 of 1% of such principal, provided that, if special circumstances exist which would render such compensation inadequate, or if distribution of principal is delayed for any reason beyond the Trustee's control for more than six (6) months, then the Trustee shall be entitled to such further compensation for the aforesaid services as is reasonable under the circumstances. The compensation for collecting and distributing income from real estate with respect to which a separate management fee is also payable shall in no event exceed 1% of the income collected.

If for any reason, any Trustee (or any successor trustee) entitled to compensation hereunder resigns or is removed and the trust assets are transferred to another trustee pursuant to the provisions of §19, the removed Trustee shall be entitled only to reasonable compensation for work necessitated by the transfer of trust assets and not to a termination or distribution fee.

§21. **Governing Law; Place of Administration**. This agreement has been drawn and was originally executed by the Trustee in the State of Ohio. All questions concerning the meaning, intention, or validity of this agreement, and all questions relating to performance hereunder, shall be judged and resolved in accordance with the laws of the State of Ohio. The principal place of administration of the trust is also the State of Ohio and its administration is governed by the law of the State of Ohio. If for any reason, the Trustee wishes to transfer the place of administration of the trust or any share created hereunder to another jurisdiction and any of the beneficiaries eligible for current distributions do not consent to such transfer, the Trustee shall, prior to such transfer, obtain an opinion letter from counsel licensed in the jurisdiction to which the Trustee seeks to transfer administration of this agreement stating that the material provisions of this agreement and the interests of the beneficiaries will not be adversely affected by the change in the place of administration. In the event the Trustee obtains said letter, the Trustee must provide notice to the beneficiaries pursuant to the law of the State of Ohio, and the beneficiaries shall thereupon have

sixty (60) days to notify the Trustee of their objection to the transfer before such transfer may take effect.

§22. **Captions**. The captions at the beginning of the several sections and paragraphs of this agreement are not part of this agreement but are only guides to assist in locating and reading such sections and paragraphs. Such captions shall be given no effect in construing this agreement.

§23. **Definitions**. As used herein, "Grantor's wife" refers to Marlene Cywes. "Grantor's son" refers to Robert Cywes. "Grantor's daughter" refers to Colette Bentley. "Descendants" of any person refers to the lineal descendants of any degree of such person born to or lawfully adopted while a minor either before or after the execution of this agreement or such person's death. "Trustee" denotes the original Trustee and any successor Trustee or Trustees. "Taxes" includes all interest and penalties imposed with respect to any tax, unless the context specifically requires that it be assigned a more limited meaning. Any discretionary authority of the Trustee to distribute income or principal to a beneficiary hereunder (other than the Grantor's wife, if such distribution is from a Marital Share) shall include the authority to distribute income or principal to such beneficiary, or for the benefit of such beneficiary. Every pronoun includes corresponding pronouns in the same person of different genders or numbers or both, to the extent the context permits.

IN WITNESS WHEREOF, Sidney Cywes, as the Grantor, and Robert Cywes and Colette Bentley as the Trustees, have signed their names hereto on this ____ day of _____, 2015.

_____
Sidney Cywes, Grantor

_____
Robert Cywes, Trustee

_____
Colette Bentley, Trustee

- 23 -

sixty (60) days to notify the Trustee of their objection to the transfer before such transfer may take effect.

§22. **Captions.** The captions at the beginning of the several sections and paragraphs of this agreement are not part of this agreement but are only guides to assist in locating and reading such sections and paragraphs. Such captions shall be given no effect in construing this agreement.

§23. **Definitions.** As used herein, "Grantor's wife" refers to Marlene Cywes. "Grantor's son" refers to Robert Cywes. "Grantor's daughter" refers to Colette Bentley. "Descendants" of any person refers to the lineal descendants of any degree of such person born to or lawfully adopted while a minor either before or after the execution of this agreement or such person's death. "Trustee" denotes the original Trustee and any successor Trustee or Trustees. "Taxes" includes all interest and penalties imposed with respect to any tax, unless the context specifically requires that it be assigned a more limited meaning. Any discretionary authority of the Trustee to distribute income or principal to a beneficiary hereunder (other than the Grantor's wife, if such distribution is from a Marital Share) shall include the authority to distribute income or principal to such beneficiary, or for the benefit of such beneficiary. Every pronoun includes corresponding pronouns in the same person or different genders or numbers or both, to the extent the context permits.


IN WITNESS WHEREOF, Sidney Cywes, as the Grantor, and Robert Cywes and Colette Bentley as the Trustees, have signed their names hereto on this _12_ day of ___August___, 2015.


_____
Sidney Cywes, Grantor


_____
Robert Cywes, Trustee


_____
Colette Bentley, Trustee


- 23 -

**Prepared By and Return To:**
William Li
Landmark Title
4540 Southside Boulevard, Suite 202
Jacksonville, Florida  32216

File No.: LMT 15-1253

*15 065303*

# General Warranty Deed

Made this August 14, 2015,  By **Sudhir R. Nadubettu, an unmarried man,** whose address is: 232 COLLIGNON WAY 4B, RIVERVALE NJ 07675, hereinafter called the Grantor, to **Robert Cywes and Colette Bentley, Trustees under the Cywes Family Trust dated May 29, 1998,** whose address is:  19906 Loxahatchee Drive, Jupiter, FL 33458, hereinafter called the Grantee:

> (Whenever used herein the term "Grantor" and "Grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations)

**Witnesseth,** that the Grantor, for and in consideration of the sum of Ten Dollars, ($10.00) and other valuable consideration, receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the Grantee, all that certain land situate in  Duval County, Florida, more particularly described as follows:

Unit No. 227, Building 2,  of Deerwood Place VI Condominium, a Condominium according to the Declaration of Condominium thereof recorded in Official Records Book 13831, page 1356, as amended in Official Records Book 13992, page 16, of the Public Records of Duval County, Florida, and all amendments thereto, together with its undivided share in the common elements.

Parcel ID Number: **154653-0934**

**Subject to** taxes accruing subsequent to December 31, 2014.

**Subject to** covenants, restrictions and easements of record, if any; however, this reference thereto shall not operate to reimpose same.

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,**  the same in fee simple forever.

**And**  the Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land; that the Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances.

**EXHIBIT 3**

**In Witness Whereof,** the Grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in our presence:*

Witness Printed Name _____ BARBARA J. Spiris

_____ (Seal)
**Sudhir R. Nadubettu**

Witness Printed Name _____ Sean Williams

State of _New Jersey_
County of _Bergen_

The foregoing instrument was acknowledged before me this _13th_ day of August, 2015, by Sudhir R. Nadubettu, an unmarried man, who is/are personally known to me or who has produced _Drivers licone_ as identification.

_Kathleen B Klose_
**Notary Public**

KATHLEEN B KLOSE
Notary Public
State of New Jersey
My Commission Expires Dec 1, 2016

Prepared by and Return to: .
Johnni Nicole Causey
Landmark Title, LLC
4540 Southside Blvd., Suite 202
Jacksonville, Florida 32216

## CERTIFICATION OF TRUST
### (Multiple Trustees)

This Certification of Trust is made this ___17___ day of August, 2019 by the undersigned, pursuant to and in accordance with Section 736.1017, Florida Statutes; accordingly, said undersigned hereby certifies the following:

1. That certain Trust known as the Cywes Family Trust dated May 29, 1998 (hereinafter the "Trust") was duly executed and created by Sidney Cywes as Settlor, and remains in full force and effect as of the date hereof.

2. The following constitute all of the duly authorized and currently acting Co-Trustees of the Trust, the addresses of which are as follows:

   Robert Cywes whose address is 19906 Loxahatchee Pointe Dr. Jupiter, Fl 33458
   Janae J. Cywes whose address is     "        "

3. That, if the above Co-Trustees are not the currently vested co-trustees of record, attached hereto are true and correct copies of the pertinent pages of the Trust and any additional documentation required to establish the above Co-Trustees as the currently acting Co-Trustees of the Trust.

4. The Trust grants to the Co-Trustees full power and authority to convey, sell, lease, encumber, manage and otherwise dispose of all trust property including, without limitation, the property described as follows:

   Unit No. 227, Building 2, of Deerwood Place VI Condominium, a Condominium according to the Declaration of Condominium thereof recorded in Official Records Book 13831, page 1356, as amended in Official Records Book 13992, page 16, of the Public Records of Duval County, Florida, and all amendments thereto, together with its undivided share in the common elements.

5. The Trust authorizes all documents including, without limitation, deeds, leases, mortgages, certifications, affidavits, closing statements, and other related documents required in connection with any sale, lease, mortgage or other transfer of trust property to be signed by:

   ( ) Other (specify): Pursuant to Section 11(s) of the Trust, Robert Cywes has the authority to act alone.

6. The Trust is:

   ( ) Trust is Revocable and the power to revoke is/was held by Sidney Cywes

7. That title to all property of the Trust shall be titled as follows: Cywes Family Trust May 29, 1998

8. The Trust has not been revoked, modified or amended in any manner that would cause any representation or certification contained herein to be untrue or incorrect in any manner.

9. The undersigned hereby acknowledge and agree that this Certification of Trust is being made pursuant to and in accordance with Section 736.1017, Florida Statutes, with full understanding that it will be relied upon to establish the truth of the matters set forth herein as provided under said Section 736.1017, Florida Statutes.

## EXHIBIT 4

**In Witness Whereof,** the undersigned has duly executed and delivered this Certification of Trust the day and year first above written.

_____
Robert Cywes, Trustee of Cywes Family Trust

_____

STATE OF FLORIDA
COUNTY OF DUVAL

Sworn to (or affirmed) and subscribed before me this ___17___ day of ___Aug.___, 2019, by Robert Cywes, Trustee of the Cywes Family Trust.

_____
Signature of Notary Public
Print, Type/Stamp Name of Notary

MARIKA SEVIN
MY COMMISSION # GG 041174
EXPIRES: October 24, 2020
Bonded Thru Budget Notary Services

Personally Known:_____ OR Produced Identification:___✓_____
Type of Identification
Produced:_____ FL DL _____

# CYWES FAMILY
# TRUST AGREEMENT

This is an amendment and restatement in full of that certain trust agreement known as the Cywes Family Trust dated May 29, 1998, and sometimes referred to as the Sidney Cywes Trust, by and between Sidney Cywes, as the Grantor, and Sidney Cywes, Robert Cywes, and Colette Bentley, as the Trustee. In this amendment and restatement, Sidney Cywes is hereinafter called the "Grantor", and Robert Cywes and Colette Bentley are hereinafter collectively called the "Trustee". This amendment and restatement is made on the date set forth at the end hereof.

## Recitals

A. The Grantor has transferred assets to the Trustee, which the Trustee hereby acknowledges receiving. The Grantor may transfer additional property to the trust by Will or otherwise. The Trustee agrees to accept such property and agrees to hold, manage, and distribute such property under the terms set forth in this Agreement.

B. The purpose of the Grantor in entering into this agreement is to effectuate a plan for the orderly, businesslike administration of the trust estate for the benefit of the Grantor, the Grantor's wife, the Grantor's son, and others. Broad discretionary powers are conferred upon the Trustee to provide adequate flexibility in carrying out this plan.

C. The Grantor contemplates that the Grantor may in the future, during the Grantor's lifetime, transfer additional property to the Trustee to be held and administered hereunder; that the Grantor may, by will, bequeath additional property to the Trustee to be held and administered hereunder; and that other persons may, by inter vivos or testamentary transfer, cause additional property to come into the hands of the Trustee to be held and administered hereunder.

D. Subject to the provisions of §11(d), the Trustee is willing to hold all property that has or may come into the hands of the Trustee hereunder, which property is not disclaimed by the Trustee, and to administer the same according to and subject to the provisions hereof.

E. Various of the terms used in this agreement are defined, and shall have the meanings set forth in the final section hereof.

The Parties Agree as Follows:

(iv)    The Trustee may appropriately respond to a change in, or prevent, abate or otherwise remedy any actual or threatened violation of any environmental law affecting such property, either before or after the initiation of an enforcement action by any governmental body.

(v)    The Trustee may refuse to accept the transfer to the trust of property if the Trustee determines that such property either is or may reasonably be believed to be contaminated by any hazardous substance that could result in liability to the trust.

(vi)    The Trustee may disclaim any power granted by any document, statute or rule of law that, in the discretion of the Trustee, may reasonably be expected to cause the Trustee to incur personal liability under any environmental law.

(vii)    The Trustee may charge the cost of any inspection, response or other action against the income or principal of the trust.

(viii)    The Trustee shall not be personally liable to any beneficiary for any decrease in value because of the compliance by the Trustee with any environmental law, including any reporting requirement. Neither the acceptance by the Trustee of property nor the failure by the Trustee to inspect property shall create any inference as to whether or not there is or may be any liability under any environmental law with respect to such property.

(ix)    As used herein, "environmental law" means any federal, state or local law relating to the protection of the environment or human health, and "hazardous substances" means any substances defined as hazardous or toxic or otherwise regulated by any environmental law.

(e)    **Sale, Lease, and Encumbrance of Real and Personal Property.** The Trustee may, upon such terms and conditions and for such considerations as the Trustee deems acceptable, grant options respecting, sell or exchange at public or private sale, pledge, hypothecate, mortgage, lease, donate, abandon, or otherwise dispose of, deal with, or encumber (for any period of time whatsoever, whether or not ending during the term of the trust) any real or personal property comprising part of the trust estate.

(f)    **Dealings with Securities.** The Trustee may cause any security comprising part of the trust estate to be registered in the Trustee's name or in the name of a nominee (with or without disclosure that the security is part of the assets of the trust estate and with or without a power of attorney for the transfer of the security attached) or may take and keep any such security in unregistered form

- 13 -

If any payment on any policy of insurance upon the life of any person is contested, the Trustee shall not be obligated to take any action for collection unless and until the Trustee shall have been indemnified to the Trustee's satisfaction against any loss, liability, or expense, including, without limitation, attorneys' fees, of taking such action. The Trustee may obtain reimbursement from any funds which the Trustee collects on any policy of insurance upon the life of any person for any advance which the Trustee makes for the purpose of effecting collection.

(h) **Location of Trust Property.** The Trustee may keep any personal property comprising part of the trust estate at any place or places within the United States or abroad, either with a depositary or custodian or otherwise.

(i) **Borrowing.** On behalf of the trust, the Trustee may borrow money on the credit of the trust estate.

(j) **Release of Guaranties.** The Trustee may consent to the modification or release of any guaranty or similar obligation inuring to the benefit of the Trustee or the trust estate.

(k) **Deeds and Other Instruments.** The Trustee may execute and deliver such deeds, bills of sale, mortgages, releases, consents, and other legal instruments as may be necessary or appropriate to deliver in connection with the administration of the trust estate.

(l) **Allocation Between Principal and Income.** The Trustee shall decide what is income and what is principal. Notwithstanding otherwise applicable law, the Trustee shall charge or credit trustee compensation, investment, advisory or custodial fees, accounting fees, attorney fees, and regular or ordinary expenses first to income and then to principal. The Trustee shall decide whether to allocate gains, losses, premiums, discounts, waste, or appreciation or depreciation in value to income or principal or both, and whether to establish reserves or sinking funds for taxes, assessments, insurance premiums, repairs, improvements, depreciation, or obsolescence, and all similar questions, on the basis of the law of the State of Ohio; provided that, if the law of the State of Ohio on any such question has not been established or is unclear, the Trustee may decide that question in such manner as the Trustee deems just, and the Trustee's decision shall then bind and conclude all interested parties.

(m) **Insurance Against Hazards.** The Trustee may carry such insurance, including public liability and property damage insurance, against such hazards to the Trustee or to the trust estate, in such amounts, and with such insurance companies (whether stock companies or mutual companies) as the Trustee deems advisable.

- 15 -

(r) **General Powers of Ownership.** In addition to and amplification of all of the particular powers herein conferred upon the Trustee, the Trustee may do anything for the preservation and management of the trust estate that the Trustee deems necessary, desirable, or expedient, and may exercise with respect to the trust estate all powers of an absolute legal and beneficial owner thereof, except only that the Trustee may not apply any part of the trust estate to the Trustee's own use or benefit (but this exception shall not be construed as preventing the payment to the Trustee of reasonable compensation for services as Trustee or of interest at a reasonable rate upon money loaned to the trust or as preventing the payment to any beneficiary of any amount to which such beneficiary may be entitled by virtue of the other provisions of this agreement). The Trustee may also disclaim or abandon any interest in property (real or personal) which is in the Trustee's hands at the time of the Grantor's death or which comes into the Trustee's hands as a result of or after the Grantor's death. The Trustee may act under this agreement without prior notice to any person and without the approval of any court. All powers of the Trustee shall be continuing ones; none shall be exhausted by the exercise or repeated exercise thereof; and a power once exercised may be exercised in a different way and with a different or inconsistent result upon any subsequent exercise thereof.

(s) **Two or More Trustees.** Whenever two or more persons, including corporations, are serving as Trustee hereunder, the act of a majority of such persons shall be deemed to be the act of all of them; provided that, if Robert Cywes is serving as the Trustee or a Co-Trustee, Robert Cywes shall have authority to make all investment decisions on behalf of the trust, without any action by the other Co-Trustee.

(t) **Digital Assets.** The Trustee shall have full authority and power to access, use, and take control of all electronic and computer equipment, including, but not limited to, desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar equipment that receives, stores, processes, or sends electronic data and records; to access, modify, delete, control, transfer, and otherwise deal with digital assets, including, but not limited to, emails, documents, images, audio, video, software licenses, domain registrations, and similar digital files, regardless of the ownership of the physical device upon which the digital asset is stored; to access, modify, delete, control, transfer, and otherwise deal with, any digital accounts, including, but not limited to, email accounts, file sharing accounts, financial management accounts, domain registration accounts, domain name service accounts, web hosting accounts, tax preparation service accounts, online stores, affiliate programs, and other online accounts; provided, however, that the Trustee shall have no duty or obligation to review any electronic or

- 17 -

# CERTIFICATE OF TRUST

STATE OF FLORIDA
COUNTY OF DUVAL                    December 23, 2016

     The undersigned hereby certify the following:

1.    This Certificate of Trust relates to the Sidney Cywes Trust dated May 29, 1998, executed by Sidney Cywes, as Grantor and Trustee, and Robert Cywes and Colette Cywes, as Trustees (the "Trust"), which Trust is now known as the Cywes Family Trust.

2.    The Cywes Family Trust dated May 29, 1998, and the Sidney Cywes Trust dated May 29, 1998, are one and the same Trust.

3.    The name of the Grantor: Sidney Cywes.

4.    The name of the initial Trustees: Sidney Cywes, Robert Cywes, and Colette Cywes.

5.    On July 18, 2003, Sidney Cywes signed a Resignation of Trustee, effectively resigning as Trustee of said trust. The Resignation of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".

6.    On this day, December 23, 2016, Colette Cywes hereby signs a Resignation of Trustee, effectively resigning as Trustee of said trust. The Resignation of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".

7.    On this day, December 23, 2016, Janae J. Cywes hereby agrees to be a Trustee of said trust, effectively signing as Trustee of said trust. The Assumption of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".

8.    From the date of execution of the Resignation and Assumption of Trustee duties on December 23, 2016, the Trust should have been referred to as the "Cywes Family Trust". The Cywes Family Trust is the surviving Trust for all purposes.

9.    The names of the Trustees empowered to act under the Trust Agreement at the time of the execution of this Certificate of Trust are: Robert Cywes and Janae J. Cywes.

10. Under Section 11 of the Trust Agreement, the Trustees are authorized to acquire, sell, convey, pledge, mortgage, lease, manage, operate, control, transfer title, divide, convert or allot the trust property, including real and personal property.

Section 11 of the Trust Agreement further authorizes the Trustees to hire agents, attorneys-in-fact, accountants, brokers, investment counsel, attorneys at law, appraisers, custodians, and other specialists, advisers, and assistants whose services are deemed by the Trustees to be desirable for the proper administration of the trust.

11. The Trust Agreement is completely revocable until the death of the Grantor, Sidney Cywes.

The undersigned hereby represent that the statements contained in this Certificate of Trust are true and correct, and there are no other provisions of the Trust Agreement or amendments to it that limit the powers of the Trustees to acquire, sell, accept, convey, pledge, mortgage, lease, manage, operate, control, transfer title, divide, convert or allot trust property, including real and personal property.

CYWES FAMILY TRUST AGREEMENT
DATED MAY 29, 1998

By: _____
Sidney Cywes, Grantor

By: _____
Robert Cywes, Trustee

By: _____
Colette Cywes, Trustee

By: _____
Janae J. Cywes, Trustee

-2-

Department of Health - Office of Vital Statistics

**STATE OF FLORIDA**
**MARRIAGE RECORD**
TYPE IN UPPER CASE
USE BLACK INK
This license not valid unless seal of Clerk,
Circuit or County Court, appears thereon.

(STATE FILE NUMBER)

CFN 20170190751
OR BK 29115 PG 1232
RECORDED 05/30/2017 08:26:50
Palm Beach County, Florida
Sharon R. Bock, CLERK & COMPTROLLER
Pg 1232; (1pg)

**50-2017-ML-003810-XXXX-NB**
(APPLICATION NUMBER)

## APPLICATION TO MARRY

| 1. NAME OF SPOUSE (First, Middle, Last) ROBERT CYWES | 1b. MAIDEN SURNAME (If applicable) | 2. DATE OF BIRTH (Month, Day, Year) NOVEMBER 23, 1963 |
|---|---|---|
| 3a. RESIDENCE - CITY, TOWN, OR LOCATION JUPITER | 3b. COUNTY PALM BEACH | 3c. STATE FL | 4. BIRTHPLACE (State or Foreign Country) SOUTH AFRICA |
| 5. NAME OF SPOUSE (First, Middle, Last) JANAE JOANNE NUSPL | 5b. MAIDEN SURNAME (If applicable) | 6. DATE OF BIRTH (Month, Day, Year) DECEMBER 26, 1981 |
| 7a. RESIDENCE - CITY, TOWN, OR LOCATION JUPITER | 7b. COUNTY PALM BEACH | 7c. STATE FL | 8. BIRTHPLACE (State or Foreign Country) WYOMING |

WE THE APPLICANTS NAMED IN THIS CERTIFICATE, EACH FOR HIMSELF OR HERSELF, STATE THAT THE INFORMATION PROVIDED ON THIS RECORD IS CORRECT TO THE BEST OF OUR KNOWLEDGE AND BELIEF, THAT NO LEGAL OBJECTION TO THE MARRIAGE NOR THE ISSUANCE OF A LICENSE TO AUTHORIZE THE SAME IS KNOWN TO US AND HEREBY APPLY FOR LICENSE TO MARRY.

| 9. SIGNATURE OF SPOUSE (Sign full name using black ink) | 10. SUBSCRIBED AND SWORN TO BEFORE ME ON (DATE) APRIL 26, 2017 |
|---|---|
| 11. TITLE OF OFFICIAL Deputy Clerk | 12. SIGNATURE OF OFFICIAL (Use black ink) |
| 13. SIGNATURE OF SPOUSE (Sign full name using black ink) | 14. SUBSCRIBED AND SWORN TO BEFORE ME ON (DATE) APRIL 26, 2017 |
| 15. TITLE OF OFFICIAL Deputy Clerk | 16. SIGNATURE OF OFFICIAL (Use black ink) |

## LICENSE TO MARRY

AUTHORIZATION AND LICENSE IS HEREBY GIVEN TO ANY PERSON DULY AUTHORIZED BY THE LAWS OF THE STATE OF FLORIDA TO PERFORM A MARRIAGE CEREMONY WITHIN THE STATE OF FLORIDA AND TO SOLEMNIZE THE MARRIAGE OF THE ABOVE NAMED PERSONS. THIS LICENSE MUST BE USED ON OR AFTER THE EFFECTIVE DATE AND ON OR BEFORE THE EXPIRATION DATE IN THE STATE OF FLORIDA IN ORDER TO BE RECORDED AND VALID.

| 17. COUNTY ISSUING LICENSE Palm Beach County | 18. DATE LICENSE ISSUED APRIL 26, 2017 | 18a. DATE LICENSE EFFECTIVE APRIL 29, 2017 | 19. EXPIRATION DATE JUNE 28, 2017 |
|---|---|---|---|
| 20a. SIGNATURE OF CIRCUIT CLERK OR JUDGE Sharon R. Bock | 20b. TITLE Clerk of Court | | 20c. BY D C M.A.P |

## CERTIFICATE OF MARRIAGE

I HEREBY CERTIFY THAT THE ABOVE NAMED SPOUSES WERE JOINED BY ME IN MARRIAGE IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA.

| 21. DATE OF MARRIAGE (Month, Day, Year) MAY 20, 2017 | 22. CITY, TOWN, OR LOCATION OF MARRIAGE Key Largo, Florida |
|---|---|
| 23a. SIGNATURE OF PERSON PERFORMING CEREMONY (Use black ink) | 23c. ADDRESS (Of person performing ceremony) 911 Sunrise Blvd, Ft Pierce Fl, 34950 |
| 23b. NAME AND TITLE OF PERSON PERFORMING CEREMONY (Or notary stamp) Father Harvey Monriso MD | 24. SIGNATURE OF WITNESS TO CEREMONY (Use black ink) |
| | 25. SIGNATURE OF WITNESS TO CEREMONY (Use black ink) Johnelle Shaw |

**INFORMATION BELOW FOR USE BY VITAL STATISTICS ONLY - NOT TO BE RECORDED**

# EXHIBIT 5

Date 4|28|17

UBS Financial Services Inc.
Mr. William T. Grové
5007 Horizons Dr.
Columbus, Ohio 43220

Dear Willie:

As Trustee of the Cywes Family Trust, I authorize and direct UBS Financial Services Inc. to transfer funds from the Cywes Family Trust account, CM1xx29, upon verbal authorization as follows:

Amount: **ALL CASH**
Bank Name: **J.P. MORGAN CHASE, NY**
ABA Number: **021000021**
FFC: **NATIONAL FINANCIAL SERVICES, LLC**
Account Number: **066196-221**
FBO: **Janae J. Nuspi**
FFC: **X93-613** 836

I agree to hold UBS Financial Services Inc. harmless in connection with the above instructions.

Sincerely,

_____
Robert Trustee, Cywes Family Trust

**EXHIBIT 6**