UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**COLETTE CYWES BENTLEY,**

    **Plaintiffs,**

    v.

**ROBERT CYWES,**

    **Defendants.**

Case No. 2:22-cv-4189
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Plaintiff Colette Cywes Bentley's Motion to Remove Defendant Robert Cywes as Trustee (ECF No. 31), Defendant's Motion for Summary Judgment (ECF No. 40), and Plaintiff's Motion to Deny or Defer Defendant's Motion for Summary Judgment (ECF No. 44).  Defendant opposed Plaintiff's Motion to Remove (ECF No. 38) and Plaintiff replied (ECF No. 39).  Plaintiff opposed Defendant's Motion for Summary Judgment (ECF No. 62) and Defendant replied (ECF No. 69).  Defendant opposed Plaintiff's Motion to Defer or Deny (ECF No. 45) and Plaintiff replied (ECF No. 48).  These motions are ripe for this Court's review.  For the reasons below, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Remove as Trustee, **DENIES** Defendant's Motion for Summary Judgment, and **GRANTS IN PART AND DENIES AS MOOT IN PART** Plaintiff's Motion to Deny or Defer.

## BACKGROUND

**I. Factual Background**

Plaintiff Colette Cywes Bentley and Defendant Robert Cywes are the only children of

1

Sidney and Marlene Cywes.[1]  (Colette Dec., ECF No. 55-1, PageID 2587, ¶ 4.)  Sidney resided in South Africa until his death in April 2020.  (*Id.* ¶ 5.)  Marlene is still living in South Africa and suffers from Alzheimer's-related dementia.  (*Id.* ¶ 6.)  Colette and Robert moved to the United States before 1998.  ((*Id.* ¶ 7; Robert Depo., ECF No. 30, PageID 468, 10:9–11.)

In 1998, Sidney formed the Cywes Family USA Trust ("Trust") as a revocable trust.  (1998 Trust, ECF No. 40-1, PageID 1301–36.)  Sidney, Colette, and Robert were named Trustees.  (*Id.* at PageID 1304, 1336.)  The Trust designated Colette and Robert as the ultimate remainder beneficiaries after the death of the survivor of Sidney and Marlene.  (*Id*. at PageID 1311.)  Sidney resigned as Trustee in 2003, leaving Colette and Robert as co-Trustees.  (Sidney Resignation, ECF No. 54-6, PageID 2441.)

On August 14, 2015, the Trust purchased a condominium in Jacksonville, Florida.  (Robert Depo., ECF No. 30, PageID 515, 199–201.)  Robert was in the midst of a divorce from Irene Wolfe and planned to use the condominium while visiting his children.  (*Id*.)  The Trust sold the condominium in 2019.  (Robert Depo., ECF No. 30, PageID 529.)  The parties dispute the validity of two documents: (1) a document associated with the condominium's purchase that purports to amend the Trust ("2015 Document") and (2) a document associated with the condominium's sale that purports to replace Colette as Trustee with Robert's current wife, Janae Cywes ("Resignation Document").

### A.  2015 Document

The 2015 Document's text allows Robert to make unilateral investment decisions for the Trust during Sidney's lifetime.  (2015 Document, ECF No. 40-1, PageID 1365.)  The text also changes the remainder beneficiary structure to favor Robert over Colette.  (*Id*. at PageID 1351–

---

[1] The Court will use first names to avoid confusion.

2

53.) The 2015 Document's signature page is dated August 12, 2015, two days before the Trust purchased the condominium. (*Id*. at PageID 1372.) It contains signatures identified as Sidney Cywes, Robert Cywes, and Colette Bentley. (*Id*.)

Robert admits that he signed Colette's name without her authorization. (Robert Depo., ECF No. 30, PageID 506–07; Resp. to Interrogatories, ECF No. 30-30, PageID 823.) Robert has stated under oath that Sidney signed his own name and sent Robert a photo of the signature page. (Robert Aff., ECF No. 40-1, PageID 1373–74.) But, he has previously testified inconsistently. In his deposition and interrogatory responses, Robert testified that he signed Sidney's name himself. (Robert Depo., ECF No. 30, PageID 506, 162:6–13; Resp. to Interrogatories, ECF No. 30-30, PageID 823.) In his divorce proceeding in October 2016, Robert testified that he had "never seen" and "never signed" the 2015 Document. (Robert Testimony, ECF No. 32-3, PageID 1045–46.) While the 2015 Document is dated August 12, 2015, the title company involved in the subsequent condominium sale produced a version of the same document dated February 1, 2015 that also bore signatures for Sidney Cywes, Robert Cywes, and Colette Bentley. (Signature Page, ECF No. 32-14, PageID 1125.)

### B. Resignation Document

In 2019, in closing for the condominium's sale, the title company asked Robert for Colette's signature on a warranty deed. (Email Chain with Title Company, ECF No. 59-12, PageID 3278–79.) Robert emailed back that Colette had resigned as Trustee and been replaced with his current wife, Janae Cywes. (*Id*. at PageID 3277–78.) Robert attached a Microsoft Word version of the Resignation Document. (*Id.* at PageID 3276, 3282–86.) The Document states:

> 6. On this day, December 23, 2016, Colette Cywes hereby signs a Resignation of Trustee, effectively resigning as Trustee of said trust. The Resignation of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".

> 7. On this day, December 23, 2016, Janae J. Cywes hereby agrees to be a Trustee of said trust, effectively signing as Trustee of said trust.  The Assumption of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".

(*Id.* at 3282.)  Metadata from the Microsoft Word document indicates that it was created on August 13, 2019.  (Microsoft Word Resignation Document Metadata, ECF No. 55-16, PageID 2758.)  A signed version of the Resignation Document was recorded in Duval County, Florida in conjunction with the sale.  (Resignation Document, ECF No. 30-29, PageID 818–19.)  That version is dated December 23, 2016 and has signatures for Sidney Cywes, Robert Cywes, Colette Bentley, and "Janae J. Cywes." (*Id.*)  On December 23, 2016, Robert and Janae were not yet married—Janae's last name was still Nuspl.  (Janae Depo., ECF No. 53-1, PageID 1693, 1695–96; Robert Depo., ECF No. 30, PageID 529.)  Robert has since admitted to signing all four names himself—and admits to signing Colette's name without her consent.  (Robert Depo., ECF No. 30, PageID 528–29.)  He testified that it is "plausible" that he created and backdated the document in response to the request from the title company.  (*Id.*)

Robert testified in his deposition that the Trust had been closed and stated through counsel that the condominium sale effectively closed the Trust because Sidney gave the proceeds to Janae.  (Robert Depo., ECF No. 30, PageID 472; Def. Counsel Email, ECF No. 55-20, PageID 2781.)  The check for the proceeds was delivered to the Robert's home in Jupiter, Florida.  (Check and Shipping Label, ECF No. 53-22, PageID 2284–85.  Days later, Robert and Janae took the check to a Fidelity branch location in Idaho to deposit it into a new account in the Trust's name that listed only Janae as Trustee.  (Janae Depo., ECF No. 53-1, PageID 1767, 1770; Fidelity Account, ECF No. 53-23, PageID 2296.)  After Fidelity account records were produced in discovery, Robert's counsel sent a letter advising that the sale proceeds were still held in the Trust.  (Def. Counsel Letter, ECF No. 55-21, PageID 2788.)

4

## II. Procedural Background

In 2022, Colette, in her individual capacity and as co-Trustee, brought this action against Robert individually and as co-Trustee. (Compl., ECF No. 1.) Colette seeks a declaratory judgment (Count I), brings a claim for breach of fiduciary duty (Count II), and asks the Court to remove Robert as Trustee (Count III). (*Id*. at PageID 12–18.)

Following Robert's deposition, Colette filed a Motion to Remove Defendant as Trustee. (ECF No. 31.) Discovery was extended to allow Robert to complete ordered production following a motion to compel by Colette. (ECF Nos. 36, 37.) Prior to the close of discovery and two months before the then-effective dispositive motions deadline, Robert filed a Motion for Summary Judgment. (ECF No. 40.) Colette filed a Motion to Deny or Defer Defendant's Motion for Summary Judgment. (ECF No. 44.) Months later, Robert had yet to complete his production and this Court sanctioned Robert for his failure to comply with discovery orders. (First Sanctions Ord., ECF No. 51.) Colette filed a Response to Defendant's Motion for Summary Judgment (ECF No. 62),[2] a Motion for Summary Judgment (ECF No. 55), and a Supplemental Motion for Sanctions (ECF No. 63). As Robert had still not produced ordered documents, this Court entered additional sanctions against him. (Second Sanctions Ord., ECF No. 78.)

Robert's Motion for Summary Judgment (ECF No. 40), Colette's Motion to Remove Defendant as Trustee (ECF No. 31), and Colette's Motion to Deny or Defer Defendant's Motion for Summary Judgment (ECF No. 44) are now before the Court.

## ANALYSIS

### I. Defendant's Motion for Summary Judgment

---

[2] The Court will consider Plaintiff's untimely Response in light of Defendant's failure to timely produce ordered discovery.

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the non-moving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party). "Though the prospect of challenging a witness's credibility is not alone enough to avoid summary judgment, summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses." *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015). "[W]here the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, [it] must show in opposition to the motion for summary judgment that [it] can produce evidence which, if believed, will meet the higher standard." *Moore, Owen, Thomas & Co. v.*

6

*Coffey*, 992 F.2d 1439, 1444 (6th Cir.1993) (quoting *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 944 (6th Cir. 1990)).

### B. Laches

To succeed in a laches defense under Ohio law, the defendant must establish the following elements: (1) the plaintiff's unreasonable delay or lapse of time in asserting a right, (2) without excuse for such a delay, (3) with knowledge—actual or constructive—of the injury or wrong, (4) that caused prejudice to the defendant.[3] *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 954 N.E.2d 104, 114 (Ohio 2011). As an equitable doctrine, the laches defense is unavailable to a defendant without "clean hands." *State ex rel. Commt. For the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 774 N.E.2d 239, 247 (Ohio 2002). A defendant cannot benefit from the doctrine of laches if he "substantially contributed to the delay in question." *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White*, 736 N.E.2d 873, 876–77 (Ohio 2000). Nor can a defendant benefit from the doctrine if he "has violated conscience or good faith or has acted fraudulently." *Meek v. Geneva*, 98 N.E.3d 907, 918 (Ohio 5th Dist. Ct. App. 2017). The opposing party must establish unclean hands by clear and convincing evidence. *Crutcher v. Oncology/Hematology Care, Inc.*, 201 N.E.3d 446, 456 (Ohio 1st Dist. Ct. App. 2022); *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 371 (6th Cir. 1977).

Defendant argues that the doctrine of laches should bar Colette's claims. Defendant contends that Colette did not bring suit until after Sidney's death, long after some of the alleged wrongful conduct, causing prejudice to the Defendant because Sidney would have corroborated his testimony. (Def. Mot., ECF No. 40, PageID 1292–96.)

---

[3] The parties agree that Ohio law applies. (Def. Mot., ECF No. 40, PageID 1292; Pl. Resp., ECF No. 62, PageID 3650.)

Plaintiff argues that even if Defendant could establish the requisite prejudice and delay, the defense is unavailable to him because he has "unclean hands." (Pl. Resp., ECF No. 62, PageID 3651.) Plaintiff has identified evidence that Robert forged and backdated her resignation as Trustee in order to sell the Trust's condominium without her knowledge and hide the proceeds. When the title company asked for Colette's signature, Robert told the company that Colette had resigned as Trustee and been replaced with Janae. Metadata from the version of the Resignation Document he sent to the title company indicates it was created the day the company asked for Colette's signature. Additionally, the Resignation Document refers to Janae as "Janae J. Cywes" even though it is dated before Robert and Janae were married, when her name was still Janae Nuspl. Moreover, Robert has admitted to signing Colette's name without her consent and does not deny that he created and backdated the document to facilitate the condominium sale.

Further, Plaintiff points to evidence that Robert attempted to hide the proceeds of the sale. The check with the proceeds was delivered to the Robert's home in Florida. Days later, Robert and Janae deposited the check into a new account in the Trust's name that did not list Colette as Trustee. However, Robert testified and initially stated through counsel that the Trust had no assets and the condominium sale proceeds were no longer held in the Trust.

If believed, this is clear and convincing evidence that Robert forged Colette's resignation as Trustee in order to hide the condominium sale proceeds. Therefore, summary judgment is **DENIED** as to the laches defense because there is a genuine dispute of material fact as to Robert's unclean hands.

### C.  2015 Amendment

Robert also seeks summary judgment as to Colette's claim for a declaratory judgment that the 2015 Document was never lawfully executed. Robert argues that "there is no question of

8

material fact that Decedent [Sydney Cywes] signed the 2015 Trust and delivered a copy to Defendant as Trustee." (Def. Mot., ECF No. 40, PageID 1299.) Robert relies on his own testimony that his father actually signed 2015 Document and that his father delivered that signature to him. (*See* Def. Mot., ECF No. 40, PageID 1297–98 (citing Robert Depo., ECF No. 30, PageID 508, 171:1–4 and Robert Aff., ECF No. 40-1, PageID 1373 ("Ex. F")).

As Plaintiff points out, Robert has previously testified differently. Earlier in this case, Robert stated under oath that he signed his father's name on the document himself. In his divorce proceeding (which was one year after he now claims his father sent him the 2015 Document), Robert testified that he had never seen it and never signed it. Additionally, the title company's version of the signature page is dated February 1, 2015, more than six months before Robert now claims his father signed the document.

A reasonable trier of fact could credit Robert's prior testimony over his current testimony. As such, there is a genuine dispute of material fact as to Robert's credibility that precludes summary judgment for Defendant here. *See Goodwin*, 781 F.3d at 323.

## II. Plaintiff's Motion to Deny or Defer Defendant's Motion for Summary Judgment

The Court **GRANTS IN PART** Plaintiff's Motion to the extent she asks the Court to consider her untimely Response to Defendant's Motion for Summary Judgment. As the Court denies Defendant's Motion, Plaintiff's Motion to Deny or Defer is otherwise **DENIED AS MOOT**.

## III. Plaintiff's Motion to Remove of Robert Cywes as Trustee

Plaintiff's Motion to Remove Robert Cywes as Trustee seeks removal pursuant to Ohio Revised Code 5807.06. This mirrors Count III of the complaint. (Compl., ECF No. 1, ¶¶ 79–84.) In her Motion for Summary Judgment, Plaintiff cites additional evidence and seeks summary judgment on Count III, restating the arguments in her Motion to Remove. (ECF No.

55, PageID 2581.)  To have the benefit of full briefing and evidence, the Court will hold in abeyance this issue for resolution with Plaintiff's Motion for Summary Judgment.  Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Remove Robert Cywes as Trustee.  The Court **ORDERS** that in the interim, no person shall dissipate funds held in the Trust's Fidelity account or otherwise held in the Trust without leave of the Court.

## CONCLUSION

For the stated reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (ECF No. 40), **GRANTS IN PART AND DENIES AS MOOT IN PART** Plaintiff's Motion to Deny or Defer Defendant's Motion for Summary Judgment (ECF No. 44), and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion to Remove Defendant Robert Cywes as Trustee (ECF No. 31).

This case remains open.

**IT IS SO ORDERED.**

**9/27/2024**                                                       **s/Edmund A. Sargus, Jr.**
**DATE**                                                            **EDMUND A. SARGUS, JR.**
                                                                    **UNITED STATES DISTRICT JUDGE**