UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COLETTE CYWES BENTLEY,

        **Plaintiff,**

    **v.**

                                **Case No. 2:22-cv-4189**
                                **JUDGE EDMUND A. SARGUS, JR.**
                                **Magistrate Judge Chelsey M. Vascura**

ROBERT CYWES,

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Colette Cywes Bentley's Motion for Partial Summary Judgment. (ECF No. 55.) Defendant Robert Cywes opposed the Motion (ECF No. 74) and Plaintiff replied (ECF No. 77). For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

## BACKGROUND

### I. Factual Background

Plaintiff Colette Cywes Bentley and Defendant Robert Cywes are the only children of Sidney and Marlene Cywes.[1] (Colette Dec., ECF No. 55-1, PageID 2587, ¶ 4.) Sidney resided in South Africa until his death in April 2020. (*Id.* ¶ 5.) Marlene is still living in South Africa and suffers from Alzheimer's-related dementia. (*Id.* ¶ 6.) Colette and Robert moved to the United States before 1998. (*Id.* ¶ 7; Robert Depo., ECF No. 30, PageID 468.) In 2017, Robert married Janae Nuspl (now Janae Cywes). (Janae Depo., ECF No. 53-1, PageID 1693, 1695–96.) Robert was previously married to Irene Wolfe. (Robert Depo., ECF No. 30, PageID 515.)

---

[1] The Court will use first names to avoid confusion.

### A.  The 1998 Trust

On May 29, 1998, Sidney formed the Cywes Trust ("Trust") as a revocable trust.  (1998 Trust, ECF No. 75, PageID 3868–3903.)  Sidney, Colette, and Robert were named Trustees.  (*Id.* at PageID 3871, 3903.)  The Trust document requires the Trustee to make any distribution directed by Sidney during his lifetime.  (*Id.* at PageID 3874.)  After Sidney's death, the document gives the Trustee discretion over distributions of income and principal to Marlene, Robert, and Colette.  (*Id.* at PageID 3876.)  The document designates Colette and Robert as the ultimate remainder beneficiaries after the death of Marlene.  (*Id*. at PageID 3878.)  The remaining income and principal is to be divided into equal shares and distributed to Robert and Colette.  (*Id.*)

In § 1(iii), the Trust document requires the Trustee's written consent to any amendment that would "change the duties or immunities of the Trustee."  (*Id.* at PageID 3872.)  "Trustee" refers to the co-Trustees collectively.  (*See id.* at PageID 3871, 3890, 3903.)  "Whenever two or more persons . . . are serving as Trustee hereunder, the act of a majority of such persons shall be deemed to be the act of all of them."  (*Id*. at PageID 3890.)  Sidney resigned as Trustee in 2003, leaving Colette and Robert as co-Trustees.  (Sidney Resignation, ECF No. 54-6, PageID 2441.)

### B.  Distributions to Robert[2]

By 2012, the Trust's assets were held by UBS.  Robert instructed UBS to make several distributions to his personal accounts.  (Emailed Notes, ECF No. 30-3, PageID 585; Email to UBS, ECF No. 55-11, PageID 2725; Email to UBS, ECF No. 55-12, PageID 2727.)  At issue in Plaintiff's Motion are five distributions:

- $30,000 on August 2, 2012 to Robert's joint personal account with his then-wife Irene Wolfe.  (Robert Depo., ECF No. 30, PageID 488.)

---

[2] Colette moves for summary judgment as to five distributions. The Court sets forth the facts relevant to those distributions.

- $15,000 on September 20, 2016 to Robert's personal account. (*Id*. at PageID 521.)

- $15,000 on October 26, 2016 to Robert's personal account. (*Id*.)

- $22,100 on November 9, 2016 to Stanley Friedland to pay for an engagement ring for his current wife, Janae. (*Id*. at PageID 523.)

- $11,000 on December 21, 2016 to Robert's personal account. (*Id*. at PageID 526.)

Robert testified that he does not recall the purpose of the four distributions to his personal accounts. (*Id*. at PageID 488, 521, 526.)  Robert also testified that "[e]very one of these payments were exclusively agreed to and orchestrated directly by [Sidney]" and that while Robert "[did not] recall the exact payments," he "absolutely know[s]" that "none of the transfers of these funds were ever made out of the trust without the direct direction from [Sidney]." (*Id*. at PageID 524.)

UBS wired the $22,100 for Janae's engagement ring on Robert's email instruction. (Email to UBS, ECF No. 75-24, PageID 4017.)  In his email, Robert indicated that UBS could call him to verify the transaction at his parents' telephone number in South Africa. (*Id*.)  In his deposition, Robert testified that he paid the money for the ring back to his father. (Robert Depo., ECF No. 30, PageID 524.)

UBS also sent $18,300 to Janae in February 2017.  An email from Sidney to Irene Wolfe states that this was a Cywes family contribution to Robert and Janae's wedding. (Sidney Email to Wolfe, ECF No. 75-12, PageID 3972–73.)  That email also states that Sidney "did ask a Trustee to act, at [his] direction, and sign on [his] behalf for several transactions over the years." (*Id*. at PageID 3972.)

In May 2017, UBS received email instructions from Sidney, Robert, and Janae to close the account and transfer the remaining balance to Janae's investment account. (UBS Email

3

Chain, ECF No. 75-17, PageID 3988–92; Sidney and Janae Email Chain, ECF No. 75-18, PageID 3995–98.) UBS sent Janae the $93,034.44 balance and closed the account. (UBS Email Chain, ECF No. 75-17, PageID 3988–92.)

### C. Condominium Purchase and Sale

On August 14, 2015, the Trust purchased a condominium in Jacksonville, Florida. (Robert Depo., ECF No. 30, PageID 515.) Robert was in the midst of a divorce from Irene Wolfe and planned to use the condominium while visiting his children. (*Id*.) A document purporting to amend the Trust was created around the time of the condo sale ("2015 Document").

In 2017, after the divorce, Robert married Janae. (Janae Depo., ECF No. 53-1, PageID 1693, 1695–96; Robert Depo., ECF No. 30, PageID 529.) The Trust sold the condominium in 2019. (Robert Depo., ECF No. 30, PageID 529.) To facilitate closing the sale, Robert sent the title company a document purporting to replace Colette with Janae as co-Trustee ("Resignation Document").

### 1. 2015 Document

The 2015 Document's text allows Robert to make unilateral investment decisions for the Trust during Sidney's lifetime. (2015 Document, ECF No. 75-4, PageID 3932.) Under the 2015 Document, after Sidney's death, the Trustee would be required to distribute all income to Marlene in quarterly payments. (*Id.* at PageID 3918.) The 2015 Document also changes the remainder beneficiary structure to favor Robert over Colette. (*Id*. at PageID 3918–20.) Following the death of Sidney and Marlene, the Trustee would be required to continue to administer the Trust for Robert's benefit and, after Robert's death, distribute the remaining income and principal according to Robert's will. (*Id.* at PageID 3918–19.)

The 2015 Document's signature page is dated August 12, 2015, two days before the Trust purchased the Jacksonville condominium. (*Id*. at PageID 3939.) It contains signatures labeled as

Sidney Cywes, Robert Cywes, and Colette Bentley.  (*Id*.)

Robert admits that he signed Colette's name without her authorization.  (Robert Depo., ECF No. 30, PageID 506–07; Resp. to Interrogatories, ECF No. 30-30, PageID 823.)  Robert has stated under oath that Sidney signed his own name and sent Robert a photo of the signature page. (Robert Aff., ECF No. 40-1, PageID 1373–74.)   But, his prior testimony conflicts with the statements in his affidavit.  In his deposition and interrogatory responses, Robert testified that he signed Sidney's name himself.  (Robert Depo., ECF No. 30, PageID 506; Resp. to Interrogatories, ECF No. 30-30, PageID 823.)  In his divorce proceeding in October 2016, Robert testified that he had "never seen" and "never signed" the 2015 Document.  (Robert Testimony, ECF No. 32-3, PageID 1045–46.)  While the 2015 Document is dated August 12, 2015, the title company involved in the subsequent condominium sale produced a version of the same document dated February 1, 2015 that also bore signatures for Sidney Cywes, Robert Cywes, and Colette Bentley.  (Signature Page, ECF No. 32-14, PageID 1125.)

In July 2015, Sidney emailed his financial advisor Willie Grove that "we are making certain changes to the Trust as Robert has no doubt mentioned."  (Sidney Email to Grove, ECF No. 75-3, PageID 3912.)   On August 10, 2015, Sidney emailed Grove that "[f]rom now on the sole beneficiary will be Robert and he will be responsible for the running with you." (Sidney Email to Grove, ECF No., 75-14, PageID 3981.)

### 2. Resignation Document

In 2019, in closing for the condominium's sale, the title company asked Robert for Colette's signature on a warranty deed.  (Email Chain with Title Company, ECF No. 59-12, PageID 3278–79.)  Robert emailed back that Colette had resigned as Trustee and been replaced with his current wife, Janae Cywes.  (*Id*. at PageID 3277–78.)  Robert attached a Microsoft Word

version of the Resignation Document.  (*Id.* at PageID 3276, 3282–86.)  The Resignation Document

states:

> 6.  On this day, December 23, 2016, Colette Cywes hereby signs a Resignation of Trustee, effectively resigning as Trustee of said trust.  The Resignation of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".
>
> 7.  On this day, December 23, 2016, Janae J. Cywes hereby agrees to be a Trustee of said trust, effectively signing as Trustee of said trust.  The Assumption of Trustee references the Trust as the "Cywes Family Trust dated May 29, 1998".

(*Id.* at 3282.)  Metadata from the Microsoft Word document indicates that it was created on August

13, 2019.  (Microsoft Word Resignation Document Metadata, ECF No. 55-16, PageID 2758.)

A signed version of the Resignation Document was recorded in Duval County, Florida in

conjunction with the sale.  (Resignation Document, ECF No. 30-29, PageID 818–19.)  That version

is dated December 23, 2016 and has signatures for Sidney Cywes, Robert Cywes, Colette Bentley,

and "Janae J. Cywes."  (*Id.*)  On December 23, 2016, Robert and Janae were not yet married—

Janae's last name was still Nuspl.  (Janae Depo., ECF No. 53-1, PageID 1693, 1695–96; Robert

Depo., ECF No. 30, PageID 529.)  Robert has since admitted to signing all four names himself—

and admits to signing Colette's name without her consent.  (Robert Depo., ECF No. 30, PageID

528–29.)  He testified that it is "plausible" that he created and backdated the document in response

to the request from the title company.  (*Id.*)

Robert testified in his deposition that the Trust had been closed.  (Robert Depo., ECF No.

30, PageID 472.)  He initially stated through counsel that the condo sale effectively closed the

Trust because Sidney gave the proceeds to Janae, leaving no assets.  (Def. Counsel Email, ECF

No. 55-20, PageID 2781.)  However, the check for the proceeds was delivered to the Robert's

home in Jupiter, Florida.  (Check and Shipping Label, ECF No. 53-22, PageID 2284–85.)  Days

later, Robert and Janae took the check to a Fidelity branch location in Idaho to deposit it into a

6

new account in the Trust's name that listed only Janae as Trustee and did not list Colette as a beneficiary. (Janae Depo., ECF No. 53-1, PageID 1767, 1770; Fidelity Trust Account, ECF No. 53-23, PageID 2296.) After Fidelity trust account records were produced in discovery, Robert's counsel sent a letter advising that the sale proceeds were still held in the Trust. (Def. Counsel Letter, ECF No. 55-21, PageID 2788.)

## II.     Procedural Background

In 2022, Colette, in her individual capacity and as co-Trustee, brought this action against Robert individually and as co-Trustee. (Compl., ECF No. 1.) Colette seeks declaratory judgments pursuant to the Declaratory Judgment Act (Count I), brings claims for breach of fiduciary duty (Count II), and asks the Court to remove Robert as Trustee (Count III). (*Id*. at PageID 12–18.)

Following Robert's deposition, Colette filed a Motion to Remove Defendant as Trustee. (ECF No. 31.) Discovery was extended to allow Robert to complete ordered production following a motion to compel by Colette. (ECF Nos. 36, 37.) Prior to the close of discovery and two months before the then-effective dispositive motions deadline, Robert filed a Motion for Summary Judgment. (ECF No. 40.) Colette filed a Motion to Deny or Defer Defendant's Motion for Summary Judgment. (ECF No. 44.) Months later, Robert had yet to complete his production and this Court sanctioned Robert for his failure to comply with discovery orders. (First Sanctions Ord., ECF No. 51.) Colette filed a Motion for Partial Summary Judgment (ECF No. 55), and a Supplemental Motion for Sanctions (ECF No. 63). As Robert had still not produced ordered documents, this Court entered additional sanctions against him. (Second Sanctions Ord., ECF No. 78.)

The Court denied Robert's Motion for Summary Judgment. (ECF No. 79.) The Court denied without prejudice Colette's Motion to Remove Robert as Trustee and indicated that it would consider the issue together with Colette's Motion for Summary Judgment. (*Id*.) Colette's Motion

for Summary Judgment is now before the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). Where the moving party faces the heightened burden of clear and convincing evidence, the moving party must prove the elements at issue "by clear and convincing evidence, such that no rational finder of fact could conclude otherwise." *Hanover Ins. Co. v. American Engineering Co.*, 33 F.3d 727, 731 (6th Cir. 1994).

The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the non-moving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

**ANALYSIS**

As subject matter jurisdiction is solely based on diversity, state law governs the substantive rights here. The Trust agreement stipulates—and the parties agree—that Ohio law applies. (1998 Trust, ECF No. 75, PageID 3901.) Though brought under the federal Declaratory Judgment Act, Ohio substantive law also applies to Plaintiff's declaratory judgment claims. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (noting that the Declaratory Judgment Act is purely procedural).

## I.    Declaratory Judgments

In her Motion, Colette asks the Court to enter judgment declaring that (1) the "forged 2015 Trust Document did not lawfully amend the trust at issue here" and (2) the "forged resignation document did not accomplish [Colette's] resignation and therefore [Colette] remains a Trustee." (Pl. Mot., ECF No. 55, PageID 2539.)

As a preliminary matter, this Court may choose whether to exercise jurisdiction over Colette's claims brought pursuant to the Declaratory Judgment Act. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).[3] Under the Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration" in a case or controversy where the court has subject matter jurisdiction. 28 U.S.C. § 2201(a). A court may decline to exercise jurisdiction even where subject matter jurisdiction criteria are met. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The choice to exercise jurisdiction in a declaratory action is discretionary and not jurisdictional. *Flowers*, 513 F.3d at 552. When deciding whether to exercise jurisdiction, this Court considers the following factors:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the

---

[3] Robert does not argue that the Court should decline to exercise jurisdiction.

legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Here, the first two factors weigh in favor of exercising jurisdiction. *Scottsdale Ins. Co.*, 513 F.3d at 557 (these factors are often analyzed together as "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue.") While resolution of the declaratory actions would not settle the entire controversy, resolution would clarify the legal relationship between the parties by settling the threshold matters of which trust document governs and whether Colette or Janae is a co-Trustee.

The third and fourth factors are neutral as there is no present or imminent state court proceeding. *See Flowers*, 513 F.3d at 558–59. The fifth factor favors resolution because the declaratory judgment claims are intertwined with Colette's other claims before the Court. *See Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422–23 (6th Cir. 2007) ("When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources.")

Accordingly, the Court will exercise jurisdiction over the declaratory judgment claims presented in Plaintiff's Motion for Summary Judgment.

### A. The 2015 Document

Colette asks the Court to rule as a matter of law that the "forged 2015 Trust Document did

not lawfully amend the trust at issue here." (Pl. Mot., ECF No. 55, PageID 2539.)  Colette argues that the amendment is not valid for three reasons: (1) Colette did not consent to the amendment as required for an amendment that would change her duties, (2) Sidney did not provide written notice to Colette of the amendment, and (3) the 2015 Document is void as a matter of law because it contains a forged signature.  (*Id*. at 2570.)  It is undisputed that Colette is still a Trustee and that she did not provide written consent to the amendment, did not receive notice of the amendment, and did not sign the 2015 Document although it bears a signature above her name.  The parties disagree as to whether the potential amendment required Colette's written consent.

Under the Trust document, an amendment that would change the Trustee's duties requires written consent of the Trustee.  "Trustee" refers to the co-Trustees collectively and an act of the Trustee is an act of the majority of the co-Trustees.  Sidney resigned as Trustee in 2003, leaving Robert and Colette as co-Trustees in 2015.  As one is not a majority of two, an amendment that would change the Trustee's duties required written consent from both Robert and Colette.

The 2015 Document would change the Trustee's duties.  Under the 2015 Document, after Sidney's death, the Trustee would no longer have discretion over income distributions and would be required to distribute all income to Marlene in quarterly payments.  Further, rather than dividing the assets following the death of Sidney and Marlene, the Trustee would be required to continue to administer the Trust for Robert's benefit.  After Robert's death, the Trustee would be required to distribute the remaining assets according to Robert's will.

Robert's arguments otherwise are unavailing.  Robert cites no authority to support his argument that the written consent provision is ineffective because it "was not requested by Decedent, but is standard language generally included in all revocable trusts drafted by Attorney Pappas."  (Def. Resp., ECF No. 74, PageID 3858.)  Robert does not respond to Colette's argument

11

that the 2015 Document makes significant changes to the Trustee's duties after Sidney's death; Robert only argues that the 2015 Document does not change the Trustee's duties "during Decedent's lifetime." (*Id.*) The original Trust document does not limit the written consent requirement to changes to the Trustee's duties during the life of the grantor. Accordingly, there is no genuine dispute of material fact that the 2015 Document did not amend the Trust.

Colette asks the Court to judicially declare that the "forged 2015 Trust Document did not lawfully amend the [T]rust." (Pl. Mot., ECF No. 55, PageID 2539.) However, the Court does not find that the entire 2015 Document is "forged" as matter of law. It is undisputed that the 2015 Document contains a forged copy of Colette's signature—Robert signed her name on the 2015 Document without her consent and presented that signature as if it were hers. However, Robert has testified that Sidney actually signed the 2015 Document and delivered that signature to him. Robert has identified emails between Sidney and his financial advisor that suggest Sidney approved of the potential amendment. If this evidence were believed, the 2015 Document would have become a valid amendment had Colette provided written consent.

Therefore, Summary judgment is **GRANTED IN PART** as to Plaintiff's declaratory judgment claim regarding the 2015 Document. The Court **ENTERS DECLARATORY JUDGMENT that the 2015 Document did not lawfully amend the Trust.**

### B. The Resignation Document

Colette asks the Court to enter declaratory judgment that the "forged resignation document did not accomplish [Colette's] resignation and therefore [Colette] remains a trustee." (Pl. Mot., ECF No. 55, PageID 2539.)

Colette has identified evidence showing that Robert "fabricated, backdated, and forged Colette's resignation after the title company asked if Colette could sign the warranty deed transferring the [condo]." (Pl. Mot., ECF No. 55, PageID 2571.) In response to an email from the

title company, Robert wrote that Colette had resigned as Trustee and been replaced with Janae. Robert attached a version of the Resignation Document. Metadata from that version of the Document indicates it was created the day the company asked for Colette's signature. Additionally, the Resignation Document refers to Janae as "Janae J. Cywes" even though it is dated before Robert and Janae were married, when her name was still Janae Nuspl. Moreover, Robert has admitted to signing all four names on the Document, including signing Colette's name without her consent. In his deposition, Robert admitted that he may have created and backdated the Resignation Document to facilitate the condominium sale.

Robert does not counter this evidence. (*See* Def. Resp., ECF No. 74, PageID 3859–60.) Robert concedes that Colette did not sign the Resignation Document and that she remains a co-Trustee. (*Id*, PageID 3859–60.) Robert argues that any alleged "fraud by signing her name to the resignation document in order to sell the Jacksonville Condo" would be fraud against a third party that did not injure the Trust because the condo was not "sold for less than fair market value and the proceeds from the sale of the Jacksonville Condo were deposited into a Trust account where they are still maintained today." (*Id*. at PageID 3860.)

There is no genuine dispute of material fact that the Resignation Document was forged, that Colette did not resign, and that Colette remains a co-Trustee. Summary judgment is **GRANTED** as to Plaintiff's declaratory judgment claim regarding the Resignation Document. The Court **ENTERS DECLARATORY JUDGMENT that the forged Resignation Document did not accomplish Plaintiff Colette Cywes Bentley's resignation and Plaintiff remains a Trustee of the Trust.**

## II.  Breach of Fiduciary Duty

Colette seeks partial summary judgment as to Robert's liability for breach of fiduciary duty. To succeed on a claim for breach of fiduciary duty under Ohio law, a plaintiff must show

(1) the existence of a fiduciary duty and (2) that the defendant breached that duty (3) causing harm. *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988). Robert does not dispute that he owed fiduciary duties as a Trustee.

The Ohio Trust Code codifies the fiduciary duties that trustees owe to beneficiaries. *See Dueck v. Clifton Club Co.*, 95 N.E.3d 1032, 1054 (Ohio 8th Dist. Ct. App. 2017). These duties include the duty to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with Chapters 5801 to 5811 of the Revised Code." Ohio Rev. Code § 5808.01.

Colette argues that there is no genuine dispute of material fact that certain of Robert's actions constitute breach of his duty: (1) unilaterally directing UBS to make five distributions to his personal benefit, (2) forging Colette's signature on the 2015 Document, and fabricating and forging the Resignation Document, and (3) placing the condo sale proceeds in an account outside control of the legitimate co-Trustee. (Pl. Mot., ECF No. 55, PageID 2574–77.)

### A. Distributions from the Trust to Robert

Colette contends that Robert improperly directed UBS to make four distributions to his personal bank account: $30,000 on August 2, 2012; $15,000 on September 19, 2016; $15,000 on October 26, 2016; and $11,000 on December 21, 2016. Colette also contends that Robert improperly distributed $22,100 to pay for Janae's engagement ring.

According to Colette, these distributions required her approval as co-Trustee because the Trustee acts through the majority of the co-Trustees. (Pl. Mot., ECF No. 55, PageID 2574–75.) However, § 3 of the Trust document requires the Trustee to make any distribution directed by Sidney during Sidney's lifetime. If Sidney directed the five distributions, Colette, as co-Trustee, had no power to withhold consent.

Robert contends that Sidney directed each of the five distributions. (Def. Resp., ECF No.

14

74, PageID 3861–62.) As Colette points out, Robert testified that he did not remember the purpose of four of the distributions. However, Robert also testified that he "absolutely know[s]" that "none of the transfers of these funds were ever made out of the trust without the direct direction from [Sidney]." (Robert Depo., ECF No. 30, PageID 524, 235:20–22.)

There is some corroboration for Robert's deposition testimony. As discussed above, there is evidence that Sidney sought to amend the Trust to Robert's benefit through the 2015 Document. Additionally, the email from Sidney to Irene Wolfe represents that Sidney approved several prior distributions and approved a $18,300 distribution to Janae. Subsequent emails from Sidney instruct UBS to close the Trust's account and distribute the balance to Janae. A reasonable factfinder could credit Robert's testimony that Sidney also approved the four prior distributions to Robert and the transfer to pay for Janae's engagement ring.

There is a genuine dispute of material fact as to whether Sidney directed the distributions. Therefore, summary judgment is **DENIED IN PART** as to whether Defendant breached his fiduciary duty when he made the five distributions.[4]

### B. The 2015 Document, the Resignation Document, and the Condo Sale Proceeds

As discussed above, there is no genuine dispute of material fact as to whether Robert forged Colette's signature on the 2015 Document and forged the Resignation Document. Robert does not argue that the forgeries did not breach his duty to administer the Trust in good faith. Rather, according to Robert, there was no resulting injury to the Trust because "the proceeds from [the

---

[4] Robert argues that the doctrine of laches precludes summary judgment for Colette as to these five distributions. (Def. Resp., ECF No. 74, PageID 3864–65.) Colette does not respond to the laches argument in her Reply. Because the Court denies summary judgment as to this portion of Plaintiff's breach of fiduciary duty claim, the Court does not address the laches defense as applied here.

condo's] sale were deposited into a Trust account where they are still maintained today." (Def. Resp., ECF No. 74, PageID 3861.)

The 2015 Document purported to all but dissolve Colette's beneficiary interest and allow Robert to make unilateral investment decisions—such as buying or selling the condo. Robert used the forged Resignation Document to facilitate the condo sale. It is undisputed that the condo sale proceeds are Trust assets. The proceeds were deposited in the Fidelity trust account that lists Janae as the sole trustee and does not list Colette as a beneficiary. Robert concedes that Colette remains a Trustee. As a result of Robert's forgeries, the Trust assets were moved outside the control of the legitimate Trustees in a manner that extinguished Colette's beneficiary interest in violation of the Trust. This transfer injured the Trust and is itself a breach of trust. *See In re Tr. Of Tary v. Seiple*, 199 N.E.3d 230, 237 (Ohio 6th Dist. Ct. App. 2022).

To the extent Robert argues that the laches defense applies here, the defense is barred by the doctrine of unclean hands. In this litigation, Robert initially told Colette that the Trust had no assets. Robert has since admitted that he forged Colette's signatures and that the condo sale proceeds are Trust assets held in an account controlled by Janae. Robert now concedes that Colette remains co-Trustee. (Def. Resp., ECF No. 74, PageID 3860.) These concessions are clear and convincing evidence that Robert acted fraudulently causing Trust assets to be deposited outside the Trust and that Robert hid his actions from Colette. As to this issue there is no genuine dispute of material fact. *See Meek v. Geneva*, 98 N.E.3d 907, 918 (Ohio 5th Dist. Ct. App. 2017) (a defendant cannot benefit from the laches defense if there is clear and convincing evidence that he "has violated conscience or good faith or has acted fraudulently").

Accordingly, summary judgment is **GRANTED IN PART** as to Count II. Robert breached his fiduciary duty when he forged Colette's signature on the 2015 Document, when he forged the

Resignation Document, and when he allowed the condo sale proceeds to be deposited in the Fidelity trust account.

### III.    Removal of Robert Cywes as Trustee

Colette seeks summary judgment on Count III, asking the Court to remove Robert as co-Trustee pursuant to Ohio Revised Code § 5807.06. The Court may remove a trustee if: (1) the trustee committed a serious breach of trust, (2) there is lack of cooperation between co-trustees, or (3) removal is in the best interests of the beneficiaries based on the trustee's ineffective administration of the trust. Ohio Rev. Code § 5807.06(B). "[T]he party seeking to remove a trustee must show a basis for removal by clear and convincing evidence." *Tomazic v. Rapoport*, 977 N.E.2d 1068, 1074 (Ohio 8th Dist. Ct. App. 2012.).

A serious breach of trust can consist of a single act that causes significant harm or involves flagrant misconduct. *Kidd v. Alfano*, 64 N.E.3d 1052, 1063 (Ohio 2nd Dist. Ct. App. 2016) (citing Ohio Rev. Code § 5807.06; Unif. Trust Code 2000 § 706, comment). The secret transfer of trust property to a separate trust account in a manner that extinguishes a co-residual beneficiary's interest in violation of the trust document "constitute[s] a serious breach of trust by itself." *In re Tr. Of Tary*, 199 N.E.3d at 237. As does the wrongful removal of a co-trustee in order to control trust assets without accountability to remainder beneficiaries. *Schwartz v. Tedrick*, 61 N.E.3d 797, 807 (Ohio 8th Dist. Ct. App. 2016). Removal is more likely to be appropriate where the breach "may make it impossible for the beneficiaries to protect their interests" or may "mask more serious violations by the trustee." Unif. Trust Code 2000 § 706, comment; *see* Ohio Rev. Code § 5807.06.

There is no genuine dispute of material fact that, by clear and convincing evidence, Robert forged Colette's resignation as co-Trustee to facilitate the sale of the Trust's condo, leading to the deposit of the proceeds in the Fidelity trust account. Robert admits to forging Colette's signature on the Resignation Document. In this litigation, Robert initially claimed that the condo sale

proceeds were distributed from the Trust to Janae by Sidney.  He has now admitted through counsel that the proceeds are the Trust's property and are held in the Fidelity trust account.  It is undisputed that the account documents list Janae as the sole Trustee and does not list Colette as a beneficiary.

Robert's forgery of his co-Trustee's resignation is flagrant misconduct.  *See Schwartz*, 61 N.E.3d at 807.  Further, as a result of Robert's misconduct, the proceeds—accounting for the entirety of the Trust's assets—were deposited without Colette's knowledge into the Fidelity trust account controlled by Janae.  As the account did not name Colette as a beneficiary, the deposit extinguished Colette's interest, in violation of the 1998 Trust.  *See In re Tr. Of Tary v. Seiple*, 199 N.E.3d at 237.

Robert argues that he "has not engaged in any conduct that has actually endangered the Trust property."  (Def. Resp., ECF No. 74, PageID 3865.)  But Robert moved all the Trust's assets to an account outside the control of the legitimate Trustee.  This is a serious harm to the Trust.

Robert's misconduct amounts to a serious breach of trust and warrants removal.  The Court **GRANTS** Plaintiff's Motion for Summary Judgment as to Count III.  The Court **ORDERS** that Robert Cywes be removed as Trustee.  The Parties are **DIRECTED** to name of a professional co-trustee to serve with Colette Cywes Bentley and jointly effectuate the terms of the Trust and to submit the name of the co-trustee or a status report on their progress towards selecting a co-trustee to the Court **within 21 days of this Order**.

### CONCLUSION

For the stated reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment. (ECF No. 55.)

The Court **ENTERS DECLARATORY JUDGMENT: (1) the 2015 Document did not lawfully amend the Trust and (2) the forged Resignation Document did not accomplish Plaintiff Colette Cywes Bentley's resignation and Plaintiff remains a Trustee of the Trust.**

The Court **GRANTS IN PART** and **DENIES IN PART** summary judgment on Count II for breach for fiduciary duty. Robert breached his fiduciary duty when he forged Colette's signature on the 2015 Document, when he forged the Resignation Document, and when he allowed the condo sale proceeds to be deposited in the Fidelity account.

The Court **ORDERS** removal of Robert Cywes as Trustee of the Trust.  The Parties are **DIRECTED** to name of a professional co-trustee to serve with Colette Cywes Bentley and jointly effectuate the terms of the Trust.  The Parties are **DIRECTED** to submit the name of the co-trustee or a status report on their progress towards selecting a co-trustee to the Court **within 21 days of this Order**.

The Court notes that the Fidelity trust account documents name Janae Cywes as trustee (ECF No. 53-23, PageID 2286), but Janae is not currently a party to this action.  A letter from Robert's counsel indicates that counsel instructed Robert "to communicate to Fidelity that he will be the title owner of the Fidelity account as the sole acting Trustee of the Trust."  (ECF No. 55-21, PageID 2788.)  Robert is **ORDERED** to provide notice to the Court as to all trustees currently named on the Trust's Fidelity account **within 7 days of this Order**.

This case remains open.

**IT IS SO ORDERED.**

**10/24/2024**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**

19